UNITED STATES of America,
Appellee,

v.

Luke JONES, also known as Mega, Aaron Harris, also known as Dog, also known as Toast, also known as DMX, also known as Hit Man Sosa, Leonard Troy Jones, also known as X, Lyle Jones, also known as Speedy, Willie Nunley, also known as Man, Eugene Rhodes, also known as Gene, also known as Sprout, David Nunley, also known as Boobie, Craig Baldwin, also known as One Eye Craig, John Foster, also known as D.C., also known as Troy Kelly, also known as Anthony Johnson, also known as John Billups, also known as David Nunley, Rasheen Lewis, also known as Rasheed Lewis, also known as Noriega, also known as Francis G. Sheen, William Gaitlin, Kevin Jackson, also known as Kong, Kenneth Richardson, also known as Primo, also known as Tyree, also known as Rico, and Leslie Morris, also known as BooBoo, Defendants,

Lance Jones and Lonnie Jones, also known as LT, Defendants–Appellants.

No. 01–1001(L), 01–1668(CON).

United States Court of Appeals, Second Circuit.

Argued Dec. 8, 2003.

Decided Aug. 23, 2004.

William M. Bloss, New Haven, Connecticut (Jacobs, Grudberg, Belt & Dow, P.C., New Haven, Connecticut, of counsel), for Defendant–Appellant Lonnie Jones.

Earle Giovanniello, New Haven, Connecticut, for Defendant–Appellant Lance Jones.

Alex V. Hernandez, Assistant United States Attorney, Bridgeport, Connecticut (Kevin J. O'Connor, United States Attorney, Alina P. Marquez, Jeffrey A. Meyer, Robert M. Spector, Assistant United States Attorneys, District of Connecticut, Bridgeport, Connecticut, of counsel), for Appellee United States.

Before: NEWMAN, CARDAMONE, and KATZMANN, Circuit Judges.

CARDAMONE, Circuit Judge.

Defendants Lance Jones and Lonnie Jones appeal their judgments of conviction and sentences entered on December 28, 2000 and December 12, 2001, respectively, in the United States District Court for the District of Connecticut (Nevas, J.). On July 25, 2001 a jury found Lonnie Jones guilty of unlawfully conspiring to distribute heroin, cocaine, and cocaine base in violation of 21 U.S.C. § 846 and of possessing a firearm with an altered serial number in violation of 18 U.S.C. § 922(k). On December 10, 2001 the district court sentenced Lonnie Jones to a term of life imprisonment for the conspiracy conviction and to a concurrent term of five years imprisonment for the firearms conviction. On September 27, 2000 a jury found Lance Jones guilty of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). On December 21, 2000 the district court sentenced Lance Jones to a term of 293 months imprisonment.

These convictions[1] were the end of a case that began with a February 2000 federal grand jury indictment against numerous defendants alleged to be involved with a narcotics trafficking conspiracy at the P.T. Barnum public housing project in Bridgeport, Connecticut, and elsewhere in that city. Defendants raise a number of objections to the proceedings below, only one of which warrants discussion. The remaining issues are without merit and are disposed of in a summary order filed concurrently with this opinion. We consider here whether the district court erred when it disqualified Lonnie Jones' attorney based on its conclusion that an unwaivable conflict of interest existed.

## BACKGROUND

### A. *The Disqualification Motion*

Lonnie Jones was scheduled to go to trial on November 8, 2000 along with a number of the other defendants charged in the indictments handed down in February 2000. On November 6 the government filed a motion to disqualify Jones' retained counsel, James Ruane, Esq. The government's motion was based on evidence seized during a search of accused drug dealer Frank Estrada's apartment. On November 2 Estrada had been arrested and his apartment searched in connection with suspected distribution of narcotics in an area of the P.T. Barnum housing project different from the one in which the conspiracy with which Jones was charged operated. Attorney Ruane represented both Lonnie Jones and Estrada at the time of Estrada's arrest.

During the search of Estrada's apartment, police found a copy of the discovery materials provided to Ruane by the government with respect to Jones' case attached to an original sheet of letterhead from attorney Ruane's office. Those materials included documents that discussed and described by brand name the narcotics sold by the Jones family in the middle court area of P.T. Barnum as well as other brand name narcotics distributed in areas different from the middle court of P.T. Barnum by another drug trafficking organization. In the unredacted version of the report containing this information, Estrada was identified as the leader of the other organization. However, in the copy of the report provided to attorney Ruane, Estrada's name was redacted as he had not yet been charged or arrested. When the materials were seized, there was a highlighter mark indicating the paragraph that discussed the brand names of heroin distributed by Estrada's organization. The government claimed that around the time these reports were provided to attorney Ruane, the Estrada organization stopped using those brand names on their narcotics.

The government moved to disqualify attorney Ruane from representing Lonnie Jones based on this information, arguing that there were a number of serious conflicts that necessitated his removal. They stressed that not only were there already existing conflicts serious enough to justify disqualification, but that there were a number of potential conflicts that would become apparent as the case proceeded.

### B. *Proceedings in District Court*

The district court held a conference in chambers on the morning of November 6, 2000 to address the government's motion

---

1. Four additional defendants were convicted of related charges at a separate trial and one defendant pled guilty to charges relating to the same set of facts. Those defendants are also appealing their judgments of conviction and sentences. The appeals were heard in tandem before the same panel, but are being addressed in a separate opinion and order.

to disqualify Jones' attorney, Ruane. Ruane, but not Jones, was at this meeting. The lawyer did not object to Jones' absence. At the meeting the district court expressed concern that due to the ongoing nature of the government's investigation of Estrada, it would be difficult, at that point to attempt to explain to Lonnie Jones what the potential conflicts of interest were since even the lawyers conceded that it was then hard to predict. The court also stated that if Jones were to be convicted under these circumstances there was a good chance he could bring a successful appeal based on ineffective assistance of counsel. It noted that it would consider whether the alleged conflict could be waived, or if, instead, it required attorney Ruane's disqualification.

The next day the same participants met in chambers. Again, attorney Ruane did not object to defendant Jones' absence, although he did state he was withdrawing from Estrada's case. The government argued that the lawyer should still be disqualified from representing Lonnie Jones because his withdrawal would not affect any of the possible sources of a serious conflict. Those sources were identified as the possibility of: (1) an ineffective assistance claim based on disclosure of confidential information; (2) Ruane being called as a witness to an alleged criminal agreement between Lonnie Jones and Frank Estrada; (3) a grand jury investigation into how Estrada obtained the materials that could lead to subpoenaing of attorney Ruane; and (4) criminal charges being brought against attorney Ruane due to his involvement in the transmission of materials to Estrada.

Later that day, after giving his lawyer time to speak with defendant Jones about the situation, defendant was arraigned in open court, and remained in court for the hearing that addressed the government's disqualification motion. The court began by stating that the record should reflect that it had conducted *in camera* hearings with the government and defense counsel. It continued by asking attorney Ruane if he had anything to report from his discussions with his client. Ruane stated he had made Jones aware of the government's claims and of his options with respect to counsel. The lawyer conceded that he could very easily end up being a witness in the government's case-in-chief, but that his client, defendant Jones, was prepared to waive the resulting conflict arising from Ruane's possible role as a witness.

The court declined to entertain the waiver, and ruled instead that there was an unwaivable conflict. It found the issues raised were serious, that the potential for conflict was real, and that if such conflict occurred it would be extremely damaging to defendant Jones. Accordingly, the district court disqualified attorney Ruane and severed defendant Jones' case from that of his co-defendants. Eventually, new counsel was appointed to represent Jones. At no time between November 2000 and defendant's trial in July 2001 did substituted counsel file a motion for reconsideration of the disqualification, or lodge any objection to the manner in which the district court conducted the *in camera* conferences on the government's motion to disqualify.

Defendant Jones now raises two objections to these proceedings. First, he contends the district court erred when it deemed any conflict unwaivable, since the government failed to establish that there was an actual or potentially severe conflict. Second, for the first time on appeal, Jones declares that notwithstanding the disqualification issue, the district court committed error mandating reversal of his conviction when it held hearings on the government's disqualification motion in his absence. We discuss each challenge in turn.

## DISCUSSION

### I Waiver of the Right to Counsel

■ The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court has nevertheless recognized that the right to choose one's own counsel is not absolute. *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); *United States v. Locascio,* 6 F.3d 924, 931 (2d Cir.1993). The Sixth Amendment guarantees a criminal defendant an effective advocate, not necessarily the advocate of his or her choosing. *Wheat,* 486 U.S. at 159, 108 S.Ct. 1692; *Locascio,* 6 F.3d at 931.

■ This interpretation of the right leads to a unique situation in the waiver context. A criminal defendant may waive his Sixth Amendment right to a representative free from conflicts of interest in order to retain a particular attorney, but— since a waiver will not necessarily cure every conflict—the Sixth Amendment's presumption in favor of counsel of choice may not be interpreted to mean that the right to waive conflicts is absolute. *Wheat,* 486 U.S. at 160, 108 S.Ct. 1692.

This circumscription of the right to counsel is based on the reality that "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id.* The disqualification issue therefore implicates not only the accused's right to counsel, but also the interests of the judiciary in preserving the integrity of its processes, and the government's interest in ensuring a fair trial and a just verdict. *Locascio,* 6 F.3d at 931.

■ Thus, while a district court is required to recognize the presumption in favor of the accused's chosen counsel, such presumption will be overcome by a showing of an actual conflict or a potentially serious conflict. *Id.* We accord a ·district court's decision to disqualify an attorney for the existence of a conflict of interest "substantial latitude," *Wheat,* 486 U.S. at 163, 108 S.Ct. 1692, and, accordingly, review its decision for an abuse of discretion, *Locascio,* 6 F.3d at 931.

■ In order to determine if a conflict of interest is subject to a waiver, the court must investigate the alleged conflict. An actual conflict of interest exists when the attorney's and the defendant's interests "diverge with respect to a material factual or legal issue or to a course of action," or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client. *United States v. Feyrer,* 333 F.3d 110, 116 (2d Cir.2003); *United States v. Blau,* 159 F.3d 68, 75 (2d Cir.1998). An attorney has a potential conflict of interest if the interests of the defendant *could* place the attorney under inconsistent duties in the future. *United States v. Kliti,* 156 F.3d 150, 153 n. 3 (2d Cir.1998).

Some conflicts mandate disqualification under the Sixth Amendment—for example, when counsel is unlicensed or has engaged in defendant's crimes. *See Bellamy v. Cogdell,* 974 F.2d 302, 306 (2d Cir.1992) (in banc) (no need to show prejudice when counsel is unlicensed); *see also United States v. Fulton,* 5 F.3d 605, 611–13 (2d Cir.1993) (defendant could not waive actual conflict where government witness implicated defense counsel in a related crime).

■ If the court determines that the attorney suffers only from a lesser actual or potential conflict, it may accept the defendant's knowing and intelligent waiver of his right to conflict-free counsel. *United States v. Perez,* 325 F.3d 115, 125–28 (2d

Cir.2003) (no mandate to disqualify where potential for attorney to become a witness at trial had been eliminated and attorney represented related party in a separate trial); *see also United States v. Schwarz,* 283 F.3d 76, 95–96 (2d Cir.2002) (disqualification mandated where defendant police officer's counsel also had ethical obligations to police union, as well as financial interest in his firm's retainer agreement with police union, where union had divergent interests from defendant). The district court retains the discretion to reject that waiver if the attorney's conflict jeopardizes the integrity of the judicial proceedings. *Perez,* 325 F.3d at 125–26; *Locascio,* 6 F.3d at 931.

In *Fulton,* we held an attorney's conflict was *per se* unwaivable when a government witness implicated the defendant's trial counsel in a heroin importation connected to the charges against defendant. 5 F.3d at 614. The court believed, logically, that this allegation meant the attorney would be more concerned about his own personal reputation and the possibility that he might be accused of a crime than he would about the interests of the defendant, his client. *Id.* at 613. *Fulton* held that the attorney's self-interest in avoiding criminal charges or harm to his reputation were enough to influence every aspect of his representation of defendant. *Id.* "[N]o rational defendant would knowingly and intelligently be represented by a lawyer whose conduct was guided largely by a desire for self-preservation." *Id.*

██ Here, the government represented that attorney Ruane and others at his law firm were likely to become the subjects of a grand jury investigation based on the possibility that they were passing information between the defendant Lonnie Jones and Estrada. This criminal investigation of Ruane, similar to the circumstances in *Fulton,* would be a *per se* unwaivable con-

flict whether or not Ruane immediately withdrew from his representation of Estrada because of Ruane's self-interest in avoiding criminal charges. This circumstance alone is enough for us to hold that the district court did not err when it disqualified Ruane.

██ Yet, there is another ground upon which we can *affirm* the district court's decision. If a district court finds that an attorney suffers from an actual or potential serious conflict that does not rise to the level of a *per se* conflict, it must then go on to determine whether a rational defendant would knowingly want to be represented by the conflicted lawyer. If not, the trial court is obliged to disqualify the attorney. *United States v. Levy,* 25 F.3d 146, 153 (2d Cir.1994). Usually the court must pass on the conflict issue at the pretrial phase when it is unclear what the future will hold for the defendant. *Wheat,* 486 U.S. at 162–63, 108 S.Ct. 1692. Conflicts of interest are notoriously hard to predict at this early stage of the criminal proceeding, even for those intimately familiar with those proceedings. *Id.* If it is difficult for a lawyer or judge to predict what future conflicts might arise during the course of a criminal trial, how much more problematic is it for a criminal defendant—unskilled in the law and criminal proceedings—to comprehend the possibilities? *Id.* at 163, 108 S.Ct. 1692.

██ Thus, in situations where a potential conflict exists, one that may ripen into an actual conflict as the trial progresses, district courts must have latitude to permit or deny a defendant's waiver of such conflict. We recognize that a trial court confronted with waiver issues is faced with an unenviable choice—no matter which way it rules—of being reversed on appeal. Hence, the trial judge is caught in a daunting dilemma between what appears to be two choices, both of which are potentially

negative from its standpoint. If it agrees to allow the defendant to waive his right to conflict-free representation, and that turns out to be detrimental to the defendant at trial, the defendant may on appeal successfully claim ineffective assistance of counsel, *id.* at 161, 108 S.Ct. 1692; ruling the other way—not allowing the waiver—the trial court is in effect depriving defendant of counsel of his choice.

■ In the case at hand, the government represented that it was possible that Ruane would be a witness in the defendant's trial. Obviously, neither the court nor the parties were assured of the path the trial would take when this decision was made. For this reason, the Supreme Court stated in *Wheat* that the district court should have "substantial latitude" in making the decision whether or not a conflict is waivable. If Ruane turns out to be an actual or unsworn witness in defendant's trial, this would be actual grounds for disqualification.

Further, the conflict in this case could not be cured by a stipulation between the parties with respect to the facts at issue. That was the situation in *Perez,* upon which Jones relies to argue that the district court erred. But in *Perez,* the situation was such that the parties stipulated to the fact at issue, thereby eliminating the need for the government to call the lawyer as a witness. *Perez* is therefore distinguishable. In this case, the government, at the time the district court made its decision, would still have been entitled to subpoena Ruane to testify if the prosecution chose to allege at trial that Estrada's and defendant Jones' conspiracies were somehow connected and these were issues that were unlikely to be stipulated to by the parties since any statements would be akin to admission of guilt. 325 F.3d at 128.

For these reasons the district court did not abuse its discretion in disqualifying attorney Ruane. The risk that he would become a witness at trial was enough alone to allow the district court to reach this determination under an abuse of discretion standard. We could not expect the district court to rule otherwise where it seems more likely than not that a number of conflicts will materialize. Whether or not they materialized, defendant Jones would have a strong argument on appeal that he had been denied effective assistance of counsel.

In consequence, we conclude that the trial court's primary obligation is to ensure that defendant receives a fair trial. It discharged that obligation when it disqualified attorney Ruane and, under the circumstances, it cannot be said that such was an abuse of its discretion.

## II   Rule 43 and the Right to be Present

■ Jones also argues that his constitutional right to be present was violated by the district court conducting hearings on the government's motion to disqualify his attorney without his presence. A defendant's constitutional right to be present during certain stages of criminal proceedings is rooted in the Confrontation Clause of the Sixth Amendment and in the Due Process Clause. *United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985) (per curiam). The Due Process Clause applies in lieu of the Sixth Amendment in situations where the defendant is not specifically confronting witnesses or evidence against him. *Id.* It requires a criminal defendant's presence "to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Snyder v. Massachusetts,* 291 U.S. 97, 108, 54 S.Ct. 330, 78 L.Ed. 674 (1934) (Cardozo, J.); *United*

*States v. Rosario,* 111 F.3d 293, 298 (2d Cir.1997).

Further, the Federal Rules of Criminal Procedure protect a defendant's right to be present at certain stages of the trial. Rule 43(a) requires the defendant be present at the arraignment, at the time of the plea, at all stages of the trial including the impaneling of the jury and the return of the verdict, and at sentencing, except as otherwise provided by the rule. The rule provides an exception for proceedings that "involve[ ] only a conference or hearing on a question of law." Fed.R.Crim.P. 43(b)(3).

■ If a defendant is entitled under Rule 43 to attend certain stages of the trial and those stages take place without the defendant's presence, the defendant or his counsel must object at the time of the violation or the defendant's right to be present will be deemed waived. *Gagnon,* 470 U.S. at 529, 105 S.Ct. 1482. The waiver must be knowing and voluntary, but it can be "implied from the defendant's conduct." *United States v. Nichols,* 56 F.3d 403, 416 (2d Cir.1995); *see United States v. Mackey,* 915 F.2d 69, 72 (2d Cir.1990).

■ In the instant case, Jones never objected to his absence from the in-chambers hearings, even though he was present during the subsequent hearing in open court when the court made its ruling. Thus, defendant had an opportunity to raise an objection to the *in camera* conferences, but neither he, nor his old counsel, or his new counsel raised the issue until this appeal. We find from the totality of these circumstances that Jones waived his right to challenge his absence from these hearings.

Defendant maintains that the waiver rule does not apply in this situation. He points out that in *Gagnon,* the Rule 43 violation took place after the district court

announced in open court that it was going to hold a meeting outside of the presence of the defendant. Jones contends that he cannot be deemed to have waived his right to be present because he did not know about the in-chambers conference until after it had occurred and could not have been expected to object to it at the time it took place. This argument ignores the fact that defendant could have objected *after* the alleged violation took place. *See Gagnon,* 470 U.S. at 528–29, 105 S.Ct. 1482 (holding that defendant waived his right to be present at an *in camera* hearing when no objection was made at trial). If Jones had done so, it would have been possible for the trial court to address the issue, and, if it determined the Rule had been violated, take steps to attempt to cure any harm done to defendant from the alleged violation.

■ Even if we did not find waiver, any possible error is subject to harmless error review. *See Nichols,* 56 F.3d at 416. For Jones to succeed on this appeal we would first have to find an error, which is a difficult quest under the circumstances of this case. The Supreme Court instructs, with respect to the right to be present, that such right is not absolute: it is triggered only when the defendant's "presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge," *Snyder,* 291 U.S. at 105–06, 54 S.Ct. 330, and there is no constitutional right to be present "when presence would be useless, or the benefit but a shadow." *Id.* at 106–07, 54 S.Ct. 330. Further, as stated, Rule 43 excepts proceedings that involve only a conference or hearing on a question of law from those which require the defendant's presence. Fed.R.Crim.P. 43(b)(3).

Jones' presence would not have enabled him to answer the arguments the government made in its motion to disqualify at-

torney Ruane. The court, in determining that Ruane had to be disqualified, relied on the fact that the government had already begun an investigation into whether Ruane had any criminal culpability for the transmission of the documents and the possibility that the government would call Ruane as a trial witness to testify to the relationship between the defendant and Estrada. Defendant Jones would not have been in a position to comment on either matter. Ruane later stated in open court in front of his client that he had explained to his client the substance of the government's claims and his options with regard to them and that defendant offered no response, indicating that defendant would not have had anything to add that would have led to a different result. This is a situation where Jones' presence would have been useless, or the benefit of his presence "but a shadow." *Snyder*, 291 U.S. at 106–07, 54 S.Ct. 330.

The conferences also primarily addressed a question of law, suggesting they fall under the exception to Rule 43 for such matters. The meetings between the court and counsel were simply a vehicle for the district court to seek the attorneys' assistance in its determination of whether the law allowed defendant Jones to waive the alleged conflicts. These were not conferences at which the court was finding facts upon which to base its legal conclusion, *see Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir.2000), but rather an inquiry into the legal considerations of a pretrial motion. *See United States v. Padilla*, 203 F.3d 156, 160–61 (2d Cir.2000) (Rule 43 does not apply to pretrial conference regarding allegations that defendant obstructed justice).

However, we need not decide whether a defendant ever has the right to be present for a hearing regarding the disqualification of his attorney since any potential error in this case was harmless. We conclude that Jones' absence from these hearings had no relation to his opportunity to defend himself against the charges brought by the government. *Cohen v. Senkowski*, 290 F.3d 485, 489 (2d Cir.2002). And while the court's decision did require Jones to retain new counsel, there is no evidence that his new attorney failed to provide the requisite quality of representation, or that this replacement had any effect on the outcome of the trial. Jones does not claim otherwise.

CONCLUSION

Accordingly, for the reasons given earlier, we reject Jones' challenges on appeal and affirm the district court's disqualification of his attorney. We reject his claim that his Sixth Amendment and due process rights were violated because of the manner in which that disqualification was imposed without his presence.

Affirmed.

However, the mandate in this case will be held pending the Supreme Court's decision in *United States v. Booker*, No. 04–104, and *United States v. Fanfan*, No. 04–105 (to be argued October 4, 2004). Should any party believe there is a need for the district court to exercise jurisdiction prior to the Supreme Court's decision, it may file a motion seeking issuance of the mandate in whole or in part. Although any petition for rehearing should be filed in the normal course pursuant to Rule 40 of the Federal Rules of Appellate Procedure, the court will not reconsider those portions of its opinion that address the defendant's sentence until after the Supreme Court's decision in *Booker* and *Fanfan*. In that regard, the parties will have until 14 days following the Supreme Court's decision to file supplemental peti-

tions for rehearing in light of *Booker* and *Fanfan.*