**UNITED STATES of America**

v.

**Michael YANNOTTI, et al., Defendants.**

**No. 04 Cr. 690(SAS).**

United States District Court,
S.D. New York.

Dec. 20, 2004.

Jennifer G. Rodgers, Michael G. Mc-Govern, Joon H. Kim, Assistant United States Attorneys, New York City, for the Government.

Joseph Corozzo, Laura Oppenheim, Rubinstein & Corozzo, LLP, Marc Allan Fernich, Law Office of Marc Fernich, Jeffrey Lichtman, Law Office of Jeffrey Lichtman, New York City, Barry Levin, Charles F. Carnesi, Garden City, NY, for Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

The government has moved to disqualify Joseph R. Corozzo, Jr. ("Corozzo"), from representing defendant Michael Yannotti ("Yannotti"). The government asserts that Corozzo suffers from a number of serious, non-waivable conflicts of interest that require his disqualification. For the reasons that follow, the government's motion is granted.

**1.** *See* 18 U.S.C. § 1961 *et seq.*

## I. BACKGROUND

Yannotti and three other defendants, including John A. Gotti, Jr., are charged with the commission of various federal crimes, including violations of the Racketeer Influenced and Corrupt Organizations Act.[1] Among the predicate acts alleged in connection with the racketeering charges against Yannotti are the murders of Robert Arena and Thomas Maranga, the attempted murder of radio talk show personality Curtis Sliwa, and the attempted murder of a victim identified in the indictment as Victim # 3. The indictment alleges that Yannotti committed these crimes as a member of a criminal organization known as the Gambino Organized Crime Family of La Cosa Nostra ("Gambino Family").

The government seeks Corozzo's disqualification on numerous grounds, which fall which fall .within four categories. *First,* the government asserts that Corozzo's loyalty to his father and uncle, both of whom are high-ranking members of the Gambino Family, is adverse to the best interests of his client Yannotti. *Second,* the government alleges that Corozzo would be an unsworn witness to events that will be the subject of testimony during the trial. *Third,* the government alleges that two government witnesses as well as Yannotti's co-defendant John A. Gotti are former clients of Corozzo. *Fourth,* the government raises an additional potential personal conflict. Finally, the government advances what it sometimes characterizes as an additional ground for disqualification or, alternatively, as an overarching theme to its motion: Corozzo's loyalties are divided because his close ties to the Gambino Family make him, in effect, "house counsel" to that organization.

In a letter written on Yannotti's behalf by a member of Corozzo's law firm, Yannotti opposes the motion to disqualify Corozzo.[2] Yannotti disputes the existence of some of these alleged conflicts and argues that, as regards the legitimate concerns raised by the government, he should be permitted to waive his right to a conflict-free attorney following the procedures outlined in *United States v. Curcio.*[3]

## II. DISCUSSION

### A. Applicable Law

■ The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense."[4] "The accused, however, does not have the absolute right to counsel of her own choosing."[5] In addition, the Second Circuit instructs:

> although a criminal defendant can waive her Sixth Amendment rights in some circumstances, that right to waiver is not absolute, since '[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'[6]

Therefore, while a district court "must recognize a presumption in favor of [the accused's] counsel of choice," a showing of an actual conflict of interest or "a serious potential for conflict" can overcome this presumption.[7]

■ "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action."[8] A potential conflict of interest exists when "the interests of the defendant could place the attorney under inconsistent duties in the future."[9] An actual or potential conflict may be so serious "that no rational defendant would knowingly or intelligently desire the conflicted lawyer's representation," in which case the district court is obliged to disqualify the attorney, without regard to any waiver on the defendant's part.[10] When an attorney suffers from multiple conflicts, the court must con-

---

2. *See* 11/29/04 Letter of Laura Oppenheim, Attorney for Yannotti, to Court ("Yannotti Let.").

3. 680 F.2d 881 (2d Cir.1982).

4. U.S. Const. amend. VI.

5. *United States v. Locascio,* 6 F.3d 924, 931 (2d Cir.1993). *See also Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) ("[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.").

6. *Locascio,* 6 F.3d at 931 (2d Cir.1993) (quoting *Wheat,* 486 U.S. at 160, 108 S.Ct. 1692).

*See also United States v. Jones,* 381 F.3d 114, 119 (2d Cir.2004) ("The disqualification issue ... implicates *not only the accused's right to counsel, but also the interests of the judiciary in preserving the integrity of its processes, and the government's interest in a fair trial and a just verdict.*").

7. *Wheat,* 486 U.S. at 164, 108 S.Ct. 1692.

8. *United States v. Perez,* 325 F.3d 115, 125 (2d Cir.2003) (citations omitted).

9. *Jones,* 381 F.3d at 119 (emphasis omitted).

10. *United States v. Levy,* 25 F.3d 146, 153 (2d Cir.1994). *See also Jones,* 381 F.3d at 120; *United States v. Schwarz,* 283 F.3d 76, 95 (2d Cir.2002).

sider them not in isolation, but rather in the aggregate.[11]

## B. Corozzo's Family Loyalties

■ The government proffers that numerous witnesses will testify that Corozzo's father, Joseph "JoJo" Corozzo, is the consigliere of the Gambino Family.[12] More significantly, the government represents that Corozzo's uncle, Nicholas "Nicky" Corozzo, a longtime "capo" of the Gambino Family, ran a crew of Gambino soldiers and associates that included Corozzo's client, Yannotti, during the time period relevant to the indictment.[13] More specifically, Yannotti allegedly reported directly to Nicky Corozzo at the time when Robert Arena and Thomas Marenga were murdered, Curtis Sliwa was shot, and Victim # 3 was shot. Yannotti does not dispute these connections for the purpose of this motion.[14]

The government's case will repeatedly refer to Corozzo's uncle in particular. This will no doubt seem very strange to the jury and could prejudice Yannotti because the association between Corozzo and a high-ranking figure in the Gambino Family may simultaneously discredit Corozzo and reinforce in the jurors' minds the notion that Yannotti himself is a bad actor. Corozzo suggests several expedients to avoid this kind of prejudice, including pronouncing his last name differently from his uncle's.[15]

Even if such a dubious tactic could succeed in disguising Corozzo's family connections from the jury, an actual conflict of interest between Corozzo and his client remains. Because Yannotti faces life imprisonment if convicted, he has some incentive to cooperate with the government. It appears unlikely, however, that Corozzo would advise his client to make a deal since Yannotti may be able to provide information and testimony that the government could use against Nicky and, perhaps, JoJo Corozzo. Similarly, Corozzo may be more likely than he would otherwise to counsel Yannotti against taking the stand in his own defense because the government's cross-examination could elicit testimony that damages Corozzo's uncle.

Corozzo counters that he has never before been disqualified because of his family connections.[16] On the other hand, it appears that he has never before found himself in the position of representing a defendant who allegedly committed crimes under the direct supervision of his uncle.[17] As a result, Corozzo's and Yannotti's interests may diverge with respect to trial strategy; at the very least, an appearance of impropriety exists insofar as Corozzo has a personal interest in what course of action his client will follow. While it is true that this conflict, standing alone, may not warrant disqualification without the opportunity of waiver, this conflict must be considered in conjunction with the other possible conflicts raised by the government.

11. See Levy, 25 F.3d at 157; United States v. Gotti, 9 F.Supp.2d 320, 323 (S.D.N.Y.1998); United States v. Rahman, 861 F.Supp. 266, 274 (S.D.N.Y.1994).

12. See 11/12/04 Letter of Assistant United States Attorney Jennifer G. Rodgers ("AUSA Rodgers") to the Court ("11/12 Govt. Let.") at 3.

13. See id. at 3–4.

14. See Yannotti Let. at 4 ("Mr. Corozzo's family members are his family members.").

15. See 12/7/04 Transcript of Oral Argument ("Corozzo Transcript") at 49.

16. See id. at 48.

17. See id.

## C. Corozzo's Role As Unsworn Witness

■ In its letters to the Court, the government refers to Corozzo's personal involvement in two events that will be the subject of testimony at trial: a gathering at Foxwoods Casino in which members of the Gambino Family allegedly discussed criminal activities, including extortion of the construction industry; and an incident in which one of the government's cooperating witnesses shot another man allegedly at Corozzo's behest.[18] Where an attorney "has first-hand knowledge of events that may be part of the government's proof at trial," there is the possibility that he or she could become an "unsworn witness for the accused."[19] In such circumstances, the attorney's relationship to the events in question may give the defendant an unfair advantage because "the attorney can subtly impart his first-hand knowledge of the events without having to swear an oath or be subject to cross-examination."[20] As a result, "[w]aiver by the defendant is ineffective in curing the impropriety in such situations, since he is not the party prejudiced."[21]

## 1. The Foxwoods Gathering

■ The government proffers that evidence at trial will show that Corozzo was present at a gathering of members of the Gambino Family, including defendant John A. Gotti and cooperating witnesses Michael DiLeonardo and Frank Fappiano, at a boxing match at the Foxwoods Casino on April 5, 1994.[22] On a videotape without audio capturing this gathering, Corozzo is shown interacting with various members of the Gambino Family, including defendant Gotti.[23] Furthermore, DiLeonardo and Fappiano are expected to testify that during the course of the evening they discussed with Gotti the extortion of the construction industry.[24]

The government sought in 1998 to disqualify Corozzo from representing Anthony Plomitallo on the basis, in part, of the very same tape.[25] In that instance, then District Judge Barrington Parker was not persuaded that Corozzo's appearance on the Foxwoods video warranted his disqualification.[26] While the government argues that DiLeonardo and Fappiano's testimony regarding a topic of discussion at that gathering exacerbates the unsworn witness problem and thus distinguishes this case,[27] Corozzo maintains that the govern-

---

18. *See* 11/12 Govt. Let. at 6–8; 12/6/04 Letter of AUSA Rodgers to Court ("12/6 Govt. Let.") at 4–9. At oral argument, the government asserted that Corozzo had been personally involved in a third event that will be the subject of testimony at trial: government witness Michael DiLeonardo's alleged retention of Corozzo in 2001 for the purpose of dissuading a Gambino soldier Craig DePalma from testifying against DiLeonardo in a criminal case in Atlanta, Georgia. *See* Corozzo Transcript at 43. The government asserts that this incident is relevant to the current case as proof of the existence of the Gambino "enterprise." *See* 18 U.S.C. § 1961(4); 12/6 Govt. Let. at 12. In addition, the government must elicit this testimony pursuant to *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

19. *Gotti*, 9 F.Supp.2d at 324.

20. *Locascio*, 6 F.3d at 933.

21. *Id.* at 934.

22. *See* 11/12 Govt. Let. at 6.

23. *See id.* at 6–7.

24. *See id.* at 7.

25. *See Gotti*, 9 F.Supp.2d at 325.

26. *See id.*

27. *See* 11/12 Govt. Let. at 22.

ment's argument regarding the tape is much the same now at it was six years ago.[28] Indeed, the government has not demonstrated that Corozzo—albeit present at the gathering—was in fact a witness to any discussion of illegal activity. Corozzo points out that several dozen people participated in the Foxwoods gathering, and he does not claim to have taken part in every conversation that occurred that evening.[29] Therefore, it remains as unclear now as it was when Judge Parker considered the Foxwoods tape "why testimony regarding the purpose of the Foxwoods gathering must specifically refer to Corozzo as a participant."[30] As the Supreme Court warned in *Wheat v. United States*, trial courts should be aware of the possibility that the government may seek to "manufacture" a conflict.[31] In this instance, it appears that there is no need for the government to create an unsworn witness problem by drawing the jury's attention to Corozzo's attendance at the Foxwoods gathering.

### 2. Corozzo's Alleged Involvement in a Shooting Incident

The government alleges that a second unsworn witness problem arises from a shooting incident in the late 1980s involving Corozzo and CW–1, whom the government expects to testify at trial. The government proffers that CW–1 will testify that he and Corozzo were socializing one night in Brooklyn in the company of two other men.[32] While in their car, the four men allegedly "got into a confrontation with a man in another car."[33] The government alleges that Corozzo urged CW–1 to shoot the other man and that CW–1 in fact did so, wounding him.[34] Allegedly, Nicky Corozzo was furious about the shooting and sent CW–1 to Florida to engage in crimes there "while the heat died down and the victim of the shooting was mollified."[35]

The government asserts that this incident will be the subject of testimony for two reasons. *First*, the incident demonstrates CW–1's long-standing relationship with Nicky Corozzo and the Gambino Family, in general.[36] *Second*, the government must elicit this testimony to satisfy the requirements of *Giglio v. United States*.[37]

While the government does not suggest it intends to charge Corozzo in connection with this incident,[38] Corozzo's involvement raises a serious question regarding his suitability as Yannotti's advocate. Even if Corozzo is demonstrably innocent of any wrongdoing, Yannotti's defense will be impaired because Corozzo cannot cross-examine CW–1 regarding the incident or question the credibility of his testimony during summation without thereby becoming an unsworn witness.[39] Indeed, Corozzo has signaled his intention not to cross-examine CW–1 or to take any position in

---

28. *See* Yannotti Let. at 4–5.

29. *See* Yannotti Let. at 5; Corozzo Transcript at 46.

30. *Gotti*, 9 F.Supp.2d at 325.

31. 486 U.S. at 159, 108 S.Ct. 1692.

32. *See* 11/12 Govt. Let. at 7–8.

33. *Id.* at 8.

34. *See id.*

35. *Id.*

36. *See id.*

37. 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

38. *See* 11/12 Govt. Let. at 30.

39. *See United States v. Fulton*, 5 F.3d 605, 610 (2d Cir.1993).

regard to the alleged shooting.[40] By forcing Corozzo to choose between becoming an unsworn witness and refraining from vigorously defending his client, CW–1's expected testimony in this regard presents a potentially serious conflict of interest.

Moreover, while this incident is not directly relevant to the charges Yannotti faces, the revelation that his attorney may have been involved in a shooting would surely prejudice him in the jury's eyes. Even if, as Corozzo urges, the "Corozzo" allegedly involved in this incident need not specifically be identified before the jury as the Corozzo representing Yannotti,[41] the court could not prevent jurors from making the connection on their own, given that the connection is indeed accurate. In any case, some degree of speculation on the jury's part would be unavoidable. Viewed in isolation, this conflict and its ramifications may not be so prejudicial as to require that Corozzo be disqualified, but as stated previously, the court must consider this particular conflict in conjunction with the others raised by the government.

## D. Prior Representation

The government asserts that in the past Corozzo has represented two of the government's cooperating witnesses in this case, Salvatore Mangiavillano and Michael DiLeonardo, as well as Yannotti's co-defendant John A. Gotti.[42]

### 1. Salvatore Mangiavillano

■ An attorney's prior representation of a witness in the case against the current client may require that the attorney be disqualified.[43] Because an attorney's duties of loyalty and confidentiality to his clients remain in force after the termination of the attorney's retainer,[44] the attorney cannot vigorously cross-examine the former client or question the client's credibility during summation without violating his obligations. Therefore, unless the former client waives these obligations,[45] the attorney's prior representation creates the potential for a serious conflict of interest.[46]

Corozzo acknowledges that he indeed represented Mangiavillano in the past.[47] In addition, the government represents that Mangiavillano is unwilling to waive this conflict of interest.[48] Because Mangiavillano is expected to provide "direct and important testimony against Yannotti at trial," [49] this prior representation presents the potential for a serious conflict.[50]

40. *See* Yannotti Let. at 5–6.

41. *See id.* at 6.

42. *See* 11/12 Govt. Let. at 10–11.

43. *Locascio,* 6 F.3d at 931.

44. *See Rahman,* 861 F.Supp. at 274.

45. *See United States v. Lussier,* 71 F.3d 456, 462 (2d Cir.1995) (holding that former client's unambiguous waiver of attorney-client privilege with respect to prior communications with defendant's attorney rendered conflict of interest non-severe and, therefore, waivable by defendant).

46. *See Jones,* 381 F.3d at 119 ("An actual conflict of interest exists ... when the attorney's representation of the defendant is impaired by loyalty owed to a prior client."); *United States ex rel. Stewart v. Kelly,* 870 F.2d 854, 857 (2d Cir.1989) ("It is hard to conceive of a conflict of interest between clients that would not be serious.").

47. *See* Yannotti Let. at 6.

48. *See* 11/12 Govt. Let. at 22–23.

49. *Id.* at 37. The government further represents that Mangiavillano will provide admissible, non-hearsay testimony. *See* 12/6 Govt. Let. at 10 n.2; Corozzo Transcript at 41.

50. Corozzo proposes that in order to mitigate the conflict Yannotti will obtain independent co-counsel to conduct the cross-examination of Mangiavillano. *See* Yannotti Let. at 6. Co-

## 2. John A. Gotti and Michael DiLeonardo

The government has submitted DiLeonardo's sworn testimony in a recent proceeding in the Southern District of New York that (1) Gotti has kept Corozzo on retainer since Corozzo's becoming an attorney and (2) DiLeonardo retained Corozzo in 2001 to inquire whether two men associated with the Gambino Family, Craig DePalma and John DiGiorgio, intended to testify against him in a trial in Atlanta, Georgia.[51] The government has not proffered any other evidence to corroborate DiLeonardo's testimony, the substance of which Corozzo vigorously disputes.[52] Without an opportunity to test the credibility of DiLeonardo's testimony concerning Corozzo's prior representation of DiLeonardo and Gotti, I cannot give conclusive weight to this testimony. Nonetheless, the testimony strongly suggests the potential for a serious conflict.

### E. Additional Personal Conflict

The government raises an additional potential personal conflict, which does not appear to be serious. Because this issue does not enter into the decision whether to disqualify Corozzo and is confidential in nature, nothing more need be said on the subject.

### F. House Counsel

The government also alleges that Corozzo acts as "house counsel" for the Gambino Family and that, consequently, his loyalties are divided between his client and the organization.[53] In addition to submitting an extensive list of Corozzo's former and current clients who are affiliated with the Gambino Family or other La Casa Nostra families,[54] the government has submitted, as discussed earlier, Michael DiLeonardo's recent testimony from another proceeding to support this allegation. Specifically, DiLeonardo testified that "Joseph Corozzo was like house counsel for us. [John Gotti] Junior had him on the payroll skimming 4, $5000 a month, running the service; every time someone was in jail or had a legal issue, Corozzo would go up front, find out what's going on."[55] DiLeonardo further testified that Corozzo had been on Gotti's payroll since the time he received his license to practice law.[56]

While it is true that these allegations were made under oath, Corozzo has not

---

rozzo might have added that his co-counsel would also take responsibility for any argument to the jury attacking Mangiavillano's credibility. I see no need to endorse such an arrangement, in view of the multiple conflicts from which Corozzo suffers. *Cf. Rahman,* 861 F.Supp. at 277 (rejecting "standby counsel alternative" where defendant's attorney had represented multiple co-defendants and potential witnesses).

**51.** *See* Excerpt from 12/7/04 Transcript of Assistant United States Attorney Michael McGovern's Direct Examination of Michael DiLeonardo in *United States v. Peter Gotti,* No. 02 Cr. 743 ("DiLeonardo Transcript"), Ex. 1 to 12/16/04 Letter of AUSA Rodgers to the Court ("12/16 Govt. Let.").

**52.** *See* Corozzo Transcript at 35–36, 39–40; Yannotti Let. at 7; 11/22/04 Letter of Eric Franz to Joseph Corozzo, Ex. A. to Yannotti Let. (letter from Michael DiLeonardo's attorney prior to and during 2001 "Gold Club case" in Atlanta stating that Corozzo at no time served as counsel to DiLeonardo).

**53.** *See* 11/12 Govt. Let. at 39; *cf. Locascio,* 6 F.3d at 932–33 (disqualifying attorney in part because his status as house counsel was potentially part of the government's proof of the existence of a criminal enterprise and, additionally, raised an ethical issue concerning the attorney's divided loyalties).

**54.** *See* 12/16 Govt. Let. at 3.

**55.** DiLeonardo Transcript at 15.

**56.** *See id.*

had an opportunity to confront this witness. There is no need, however, to afford Corozzo such an opportunity because the multiple conflicts described above make it unnecessary for this Court to consider Corozzo's alleged status as house counsel as an independent ground for disqualification. Moreover, DiLeonardo's characterization of Corozzo as "house counsel" does not require the conclusion that Corozzo's loyalties are in fact split between Yannotti and the Gambino Family. While it appears that Gotti may have paid Corozzo to act as a first responder of sorts, the government has not proffered any direct evidence that Gotti paid Corozzo to represent Yannotti or others.[57] Nor has the government argued that Gotti compelled Yannotti or any other defendant to retain Corozzo.[58] In any case, I have not based my decision on this allegation because other sufficient grounds exist to disqualify Corozzo.[59]

### G. Summary of Conflicts

Taken together, three of the conflicts described above—Corozzo's close family relationship with his client's direct superior in the Gambino Family, Corozzo's alleged involvement in a shooting incident that will be the subject of testimony at trial, and Corozzo's prior representation of a material witness against his current client—are sufficiently severe that no rational defendant would knowingly or intelligently desire Corozzo's representation

under these circumstances.[60] Therefore, notwithstanding Yannotti's purported desire to waive his right to a conflict-free attorney, I conclude that Corozzo must be disqualified in order to preserve the integrity of the judicial process as well as the governments' interests in ensuring a fair trial and a just verdict.[61]

### III. CONCLUSION

For the foregoing reasons, the government's motion to disqualify Corozzo is granted.

**SO ORDERED.**

---

57. *See* Corozzo Transcript at 37–38. *Cf. Locascio*, 6 F.3d at 932–33 (finding that attorney acted as house counsel to the Gambino Family based on attorney's receipt of "benefactor payments" from John Gotti, Sr. for representing others).

58. *See* Corozzo Transcript at 37. *Cf. Gotti*, 9 F.Supp.2d at 328 (finding that attorney acted as house counsel based in part on government's proffering evidence that defendant was compelled to retain attorney at the direction of Gambino Family members).

59. I do note, however, that in the absence of other grounds for disqualification, a hearing would be required to test the credibility of DiLeonardo's very serious allegations in regard to Corozzo's conflicting loyalties.

60. *See Levy*, 25 F.3d at 153.

61. *See Jones*, 381 F.3d at 119.