**UNITED STATES of America,**

v.

**Michael SCARPACI, Defendant.**

**No. S1 09 Crim. 1243(LAK).**

United States District Court, S.D. New York.

Aug. 17, 2010.

Elie Honig, Chi T. Steve Kwok, Assistant United States Attorney, Preet Bharara, United States Attorney, Joseph Corozzo, Rubinstein & Corozzo, LLP, for Defendant.

## MEMORANDUM OPINION

LEWIS A. KAPLAN, District Judge.

Michael Scarpaci, a reputed associate of the Gambino organized crime family, is awaiting trial on multiple felony counts. The government has moved to disqualify his attorney, Joseph Corozzo, Esq., on the ground that his representation of Scarpaci raises an unwaivable conflict of interest.

### Facts

Scarpaci is charged, among other things, with a racketeering conspiracy, the objects of which allegedly included murder, witness tampering and murdering a witness, extortion, mail and wire fraud, loan sharking, narcotics distribution, sex trafficking of a minor, and operating an illegal gambling business. On April 28, 2010, Mr. Corozzo filed a notice of appearance on his behalf.

The government's motion to disqualify is based on four alleged "currently known conflicts and/or potential conflicts" of interest: that (1) Corozzo has been found to have participated in obstruction of justice, (2) the trial evidence will include a recording of a co-defendant discussing the likelihood that Corozzo would be arrested and lose his law license, (3) Corozzo previously has represented a potential government witness in this case, and (4) Corozzo is the "house counsel" of the Gambino family, in which two of Corozzo's family members

hold leadership positions. The government argues that "[w]hile some of the conflicts ... might, in isolation, be waivable, the combination of all [four] conflicts requires Mr. Corozzo's disqualification."[1]

### Discussion

] Scarpaci, like any criminal defendant, is entitled to conflict-free legal representation. "[W]hile a defendant generally may waive his Sixth Amendment right to an unconflicted attorney, 'the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.'"[2]

] A conflict of interest is either potential or actual. A potential conflict arises when "the interests of the defendant could place the attorney under inconsistent duties in the future."[3] An actual conflict arises when the attorney's and the defendant's interests "diverge with respect to a material factual or legal issue or a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client."[4] If an attorney labors under a potential conflict of interest, the defendant may waive the right to conflict-free counsel.[5] Where an attorney labors under an actual conflict of interest, however, the public interest "in ensuring that criminal trials are conducted within the ethical standards of the profession and that the legal proceedings appear fair to all who observe them"[6] trumps the right to counsel of the defendant's choice and requires disqualification of the attorney. In other words, an actual conflict is not waivable by the defendant.

### I. Alleged Conflicts

#### A. Corozzo's Alleged Obstruction of Justice

] In *United States v. Napoli*,[7] the government moved to disqualify Corozzo on the ground that he was involved in obstruction of justice, the crime for which his client, Gaetano Napoli, had been indicted. The government here argues that the *Napoli* court "found that there was a substantial factual basis to find that Mr. Corozzo had participated in this obstruction crime."[8] The government's contention, however, is without merit. In *Napoli*, the court granted the motion to disqualify Corozzo as trial counsel on the ground that "the jury could infer that Corozzo's involvement" in conversations at issue in that case "evidences his own corrupt intent to obstruct the investigation into Napoli's alleged crimes."[9] The court, however, made no finding as to whether Corozzo in fact had obstructed justice. Thus, the government's contention here that "Mr. Corozzo has recently been involved in obstruction of justice"[10] is inaccurate. Moreover, the government concedes that

1. Gov't Mem. 20.

2. *United States v. Fulton*, 5 F.3d 605, 612 (2d Cir.1993) (quoting *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988)).

3. *United States v. Jones*, 381 F.3d 114, 119 (2d Cir.2004).

4. *Id.* at 119.

5. *United States v. Perez*, 325 F.3d 115, 127 (2d Cir.2003); *United States v. Pizzonia*, 415 F.Supp.2d 168, 176 (E.D.N.Y.2006).

6. *Wheat*, 486 U.S. at 160, 108 S.Ct. 1692.

7. No. 10–CR–150(JG), 2010 WL 1687669, 2010 U.S. Dist. LEXIS 41219 (E.D.N.Y. Apr. 27, 2010).

8. Tr., July 27, 2010, at 5:3–5.

9. 2010 WL 1687669, at *3, 2010 U.S. Dist. LEXIS 41219, at *8.

10. Gov't Mem. 7.

the conduct at issue in *Napoli* is not "substantively related to the case here" and, in any event, that any potential conflict relating thereto could be waived by Scarpaci. It concedes also that "the Government is unaware of any information showing that Mr. Corozzo participated in the specifically-charged RICO predicate offenses or the non-RICO counts on which [Scarpaci] has been indicted." [11] The government's reliance on *Napoli* therefore is unavailing.

### B. Whether Corozzo Would Be an Unsworn Witness

█ The government asserts that it intends to introduce at trial a recorded conversation from February 2006, in which Lewis Kasman, allegedly a Gambino family associate and government informant, and co-defendant Daniel Marino allegedly discussed the possibility that Corozzo would be arrested and lose his law license. It claims that the recording would be relevant to the charges against Marino on the theory that it shows, among other things, Marino's ongoing participation and leadership role in the racketeering enterprise. It asserts that the introduction of the recording would raise a potential conflict of interest with respect to Corozzo's representation of Scarpaci on the ground that "it implicates Mr. Corozzo in the same racketeering enterprise charged in the case here" and that Corozzo "will become an unsworn witness at trial." [12]

As an initial matter, the recorded conversation does not directly suggest that Corozzo has engaged in any criminal conduct. Moreover, the government relies upon *Napoli*, in which the court noted Corozzo's "firsthand knowledge of the events in question" and concluded that "the jury may accept Corozzo's 'unsworn testimony' about events precisely because he was present for them." [13] Here, by contrast, Corozzo neither was present during nor participated in the conversation between Kasman and Marino. Thus, the government's allegation that Corozzo has "firsthand knowledge" of "what it means to be an associate of the Gambino Family, the obligations and benefits of that association, and the activities in which the Gambino Family engages to make money" [14] is unfounded.

The Court is not persuaded that introduction of the recorded conversation, "standing alone, requires [Corozzo's] disqualification." [15]

### C. Corozzo's Prior Representation of a Potential Government Witness

█ The government asserts that Corozzo previously has represented a government witness in this case ("CW-2"). It

---

11. *Id.* at 8.

12. *Id.* at 11.

13. 2010 WL 1687669, at *5, 2010 U.S. Dist. LEXIS 41219, at *12.

14. Gov't Mem. 12.

15. *Id.*; *see, e.g., United States v. Liszewski,* No. 06–CR–130 (NGG), 2006 WL 2376382, at *13 ("As [the attorney] was not a party to that conversation [between two co-defendants], I fail to see how he has first-hand knowledge of it. Therefore, at this time, I find that this does not raise a potentially serious conflict of interest.").

In any event, the Court is not persuaded that Marino's statement that Corozzo's father "knows the kid's gonna wind up jammed up" reflects, as the government contends, a belief that Corozzo would be "arrested" and "lose his law license." *Id.* at 11; Tr., July 27, 2010, at 11:15–28; Ex. C at 13. It seems plausible that Marino was referring instead to government motions to disqualify Corozzo. *See* Ex. C at 12 ("A know (UI) and I brought this to read 'cause I know you like to keep up to date on your reading material. That's that recusal on my Joseph ... the judge denied it.").

maintains that "although CW–2 does not have any information directly relating to Mr. Corozzo's current client—Michael Scarpaci—CW–2 does have information about other co-defendants . . . and about the existence, structure, and nature of the charged enterprise." [16]

■ An attorney's former representation of a government witness on a substantially related matter can create the potential for serious conflict of interest warranting disqualification, as the attorney may be limited in impeaching a former client or attacking his or her credibility on summation.[17] The government, however, concedes that "the subject matter of Mr. Corozzo's prior representation of CW–2 is only tangentially related to the subject matter of the case here." [18] It acknowledges also that Corozzo's prior representation of CW–2 does not "require a *per se* disqualification." [19] In consequence, Scarpaci may waive a potential conflict of interest arising from Corozzo's representation of CW–2.

### D. Corozzo's Connection to the Gambino Family

■ The indictment alleges that Michael Scarpaci was an associate of the criminal enterprise in which Corozzo's father allegedly is consigliere and his uncle a capo. The government maintains that Corozzo also is an associate of the Gambino family and serves as its "house counsel." It argues that Corozzo's family relationships and "demonstrated association" with the Gambino family pose a conflict of interest on the ground that "the jury here will learn that two of Mr. Corozzo's close relatives were leaders of the very racketeering enterprise charged in the Indictment—to the detriment of Mr. Corozzo's client here, Michael Scarpaci." [20]

The government relies on *United States v. Yannotti*,[21] which held that Corozzo's loyalties to his father and uncle gave rise to an actual conflict of interest between Corozzo and his client in that case. The court's holding rested on the government's representation that multiple witnesses would testify at trial that the defendant committed the charged crimes "under the direct supervision of [Corozzo's] uncle." [22] The court reasoned that the government's repeated references during trial to Corozzo's uncle could "simultaneously discredit Corozzo and reinforce in the jurors' minds the notion that [defendant] himself is a bad actor." [23] It found that the defendant's relationship to Corozzo's uncle, in combination with Corozzo's alleged involvement in a shooting that would be the subject of trial testimony and prior representation of a "material" witness, required Corozzo's disqualification.[24]

The facts here are distinguishable. As the government concedes, it "is not aware of any proof at this point showing that Scarpaci committed any of the alleged RICO predicate acts under the direct supervision of either [Corozzo's father or uncle]." [25] Moreover, there is no allegation that Corozzo personally was involved in

16. Gov't Mem. 13.

17. *Pizzonia*, 415 F.Supp.2d at 177 (citing *Ciak v. United States*, 59 F.3d 296, 304–05 (2d Cir.1995), abrogated on other grounds by *Mickens v. Taylor*, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002)).

18. Gov't Mem. 15.

19. *Id.*

20. *Id.* at 18.

21. 358 F.Supp.2d 289 (S.D.N.Y.2004).

22. *Id.* at 292.

23. *Id.*

24. *Id.* at 295.

25. Gov't Mem. 17.

any of the charged crimes or that his previous representation of CW–2 was "substantially related" to the subject matter of this case. The government's reliance on *Yannotti* therefore is unpersuasive.

In any event, *United States v. Pizzonia*[26] is instructive. The court there found that Corozzo's family relationships and alleged association with the Gambino family as its house counsel were insufficient to require his disqualification. "There is no indication [ ] that defense counsel is being paid by third parties ... for his representation, nor is there any reason to believe that members of organized crime are attempting to limit a good faith and aggressive defense."[27] So too here.

## II. Existence of an Unwaivable Conflict of Interest

 "If the court discovers that the attorney suffers from a severe conflict—such that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation—the court is obliged to disqualify the attorney."[28] The government argues that "while some of the conflicts discussed above might, in isolation, be waivable, the combination of all [four] requires Mr. Corozzo's disqualification" on the ground that a knowing and intelligent waiver cannot be obtained.[29] It reliance upon *United States v. Levy*[30] and *Wheat v. United States*,[31] however, is misguided.

*Levy* held that disqualification of an attorney was required where the attorney

"labored under actual conflicts of interest during the course of his representation of [defendant]."[32] *Wheat* states that "the district court must be allowed substantial latitude in refusing waivers" of either an actual or potential conflict of interest.[33] Neither case, however, addresses whether disqualification is required where an attorney labors under multiple potential conflicts of interest. Thus, the government's contention that "the Court may take a series of waivable conflicts and find them to be [un]waivable"[34] is unsupported.

 In any event, the government has not identified any actual conflict of interest arising from Corozzo's representation of Scarpaci. The Court finds that each of the potential conflicts that the government alleges may be waived by Scarpaci provided that his waiver is knowing and intelligent. In all of the circumstances, the Court is not persuaded that the potential conflicts of interest in their totality require Corozzo's disqualification.

## Conclusion

For the foregoing reasons, the government's motion to disqualify Joseph Corozzo, Esq., is denied. The government shall arrange with the Court's case manager a mutually convenient time for a *Curcio* hearing with respect to Mr. Corozzo's representation of Scarpaci.

SO ORDERED.

26. 415 F.Supp.2d 168 (E.D.N.Y.2006).

27. *Id.* at 185 ("It would be inappropriate to burden an attorney's career with the background of his relatives.").

28. *United States v. Levy*, 25 F.3d 146, 153 (2d Cir.1994).

29. Gov't Mem. 20.

30. 25 F.3d 146 (2d Cir.1994).

31. 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).

32. 25 F.3d at 157.

33. 486 U.S. at 163, 108 S.Ct. at 1699.

34. Tr., July 27, 2010, at 17:24–18:2.