Grayton v. Ercole

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2011

(Argued: September 21, 2011                    Decided: August 15, 2012)

Docket No. 10-1419

_____

NATHANIEL GRAYTON,

*Petitioner-Appellant*,


v.


ROBERT ERCOLE,

*Respondent-Appellee*.


_____

Before: POOLER, B.D. PARKER, and CARNEY, *Circuit Judges*.

Appeal from the United States District Court for the Eastern District of New York

(Sandra L. Townes, *J*.) denying Nathaniel Grayton's petition for a writ of habeas corpus based

on his exclusion from a *Geraci* hearing.  We hold that there is a right to be present at a *Geraci*

hearing and that appellant waived that right.  Accordingly, we affirm the district court's denial of

the writ.

Affirmed.

Parker, B.D., Circuit Judge, filed a concurring opinion.

1

JULIA PAMELA HEIT, New York, N.Y., *for appellant*, Nathaniel Grayton.

MORGAN J. DENNEHY**,** Leonard Joblove, Anthea N. Bruffee, Assistant District Attorneys (of counsel) on behalf of Charles J. Hynes, District Attorney Kings County, Brooklyn, N.Y., *for appellee*, Robert Ercole.

POOLER, *Circuit Judge*:

This appeal arises from a denial of a petition for a writ of habeas corpus. Appellant Nathaniel Grayton was found guilty on January 17, 2003 after a jury trial, of Murder in the Second Degree, N.Y. Penal Law § 125.25(1). He was sentenced to twenty-five years to life imprisonment on February 6, 2003. He exhausted his state appeals. He then timely petitioned for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in the United States District Court for the Eastern District of New York, arguing that his exclusion from a *Geraci* hearing violated his constitutional right to presence at all material stages of the trial. *Geraci* hearings are held in New York state courts to determine whether a defendant has procured a witness's unavailability by misconduct and has thus forfeited his Confrontation Clause rights in regards to that witness. *People v. Geraci*, 85 N.Y.2d 359, 365-66 (1995). The district court assumed arguendo that Grayton had a federal constitutional right to be present at the hearing and then determined that he had waived that right. Accordingly, it denied the writ. We now affirmatively hold that there is a right to be present at a *Geraci* hearing. We also hold that right was waived in Grayton's case and so affirm the district court's judgment.

Judge Parker concurs in a separate opinion.

2

## BACKGROUND

On November 27, 2001, Isaiah Rodriguez was shot to death in front of a residence in Brooklyn during a confrontation with appellant Nathaniel Grayton. Grayton was indicted and brought to trial in New York State Supreme Court, Kings County. Jessica Osario, one of two eyewitnesses called to testify for the prosecution, had to be produced for the trial pursuant to a material witness order. After being brought to court, Osario was provided a lawyer. Without Grayton or his counsel present, the judge began questioning Osario about her reluctance to testify. Osario's counsel indicated his belief that Osario was "in extreme fear of the family of the defendant." He also indicated that if forced to testify, Osario would say she did not remember anything. Grayton and his counsel were only brought into the courtroom after the court offered to hear an application about the possibility of closing the courtroom for Osario's testimony. While both defense counsel and Grayton were present, Osario's attorney repeated that Osario was very frightened of having Grayton's family in the courtroom. Osario refused to state what had made her fearful, saying only that she would absolutely refuse to testify and that they could "take [her] in" if necessary. The court found her in contempt and had her held overnight.

When proceedings began the next day, defense counsel appeared and stated, "my client is produced but he's not present. I waive his appearance for the purposes of conference for right now." Some time after this waiver, Grayton was brought into the courtroom. The court then broke for lunch. After the recess, the court noted, "[Defense counsel] is present. [He] is here without his client." Grayton's lawyer replied "That's correct, Your Honor." During this time, Osario continued her refusal to testify. Her counsel indicated that it was his "understanding that

3

the statements in the Grand Jury will differ substantially from her testimony on the stand in this particular case."

After more discussion between the parties, the prosecutor requested a *Geraci* hearing. A *Geraci* hearing is "held in New York criminal cases to determine whether the defendant has procured a witness's absence or unavailability through his own misconduct, and thereby forfeited any hearsay or Confrontation Clause objections to admitting the witness's out-of-court statements." *Cotto v. Herbert*, 331 F.3d 217, 225-26 (2d Cir. 2003); *see also People v. Geraci*, 85 N.Y.2d 359 (1995).[1] The court responded to the prosecutor's request by saying, "[n]ow, just to be clear, we still have [defense counsel] here. We do not have the defendant present. The defendant is not entitled to be present at a Gerac[i] hearing nor is his counsel, I believe." Defense counsel did not object to this statement, but instead argued that there was no basis to hold the hearing, given Osario's counsel's suggestion that his client feared perjury, not Grayton. The court responded to this objection by telling defense counsel, "I'm a little conflicted. I know that this hearing is meant to be held out of the presence of the defendant[,] but obviously if there is going to be any issue as to whether the defendant is responsible for any of these threats and how he can respond if his attorney is precluded, so I think we're going to let you stay [defense counsel]." The court asked Osario's lawyer "whether [Osario's] refusal has anything to do with threats or fear," to which he responded, "[n]ot that I know of, Judge." The court nonetheless decided to "to give [the prosecution] the opportunity to present" its evidence of misconduct in a *Geraci* hearing. The court told defense counsel "certainly your client is not going to be present." He replied, "[i]t's understood, Your Honor."

---

[1] *Geraci* hearings are also known as *Sirois* hearings. *See Geraci*, 85 N.Y.2d at 363 n.1. *Mastrangelo* hearings are the federal equivalent. *See United States v. Mastrangelo*, 693 F.2d 269 (2d Cir. 1982).

4

At the hearing, the prosecution called a detective, an assistant district attorney, Osario, and Osario's mother to testify. Grayton's attorney did not call any witnesses or conduct any cross-examination. He made only a summation, arguing to the court that misconduct was not demonstrated on the part of his client. Defense counsel framed his role in the *Geraci* hearing as "having the opportunity to observe [it]." Grayton was not present during the hearing. The next day, with Grayton present, the court issued its decision. After discussing at length its finding that Osario was made unavailable by Grayton's misconduct, the court indicated that Osario's grand jury testimony would be admissible in lieu of her live testimony at trial.

After the jury was reseated, the court reporter who originally transcribed Osario's grand jury testimony read it into the record. That testimony indicated that on the night of the incident, Osario was standing in front of her building with three other people. While they were outside, Isaiah Rodriguez drove up in his car, made a U-turn and parked. He then went inside the apartment of Genaia Wright.[2] At that point Grayton came outside, and he and Rodriguez began arguing. Osario reported Grayton was putting his hands in Rodriguez's face, to which Rodriguez responded by punching him. Osario heard three or four gunshots and then ran. Grayton's left hand was in his pocket when he was arguing with Rodriguez; Osario did not see a gun. After the shooting, Grayton rode away on his bicycle, saying "Niggers think I'm playing." This testimony substantially corroborated the testimony of the other eyewitness who testified at trial.

Grayton was found guilty of Murder in the Second Degree, N.Y. Penal Law § 125.25(1), on January 17, 2003, and was sentenced to 25 years to life imprisonment on February 6, 2003. On appeal to the Second Department of the Appellate Division of New York, appellant argued,

---

[2] Wright was the other eyewitness who testified against Grayton at trial.

as he does now, that his constitutional right to presence was violated by his exclusion from the

*Geraci* hearing.  In a summary affirmance, the Appellate Division upheld Grayton's conviction,

holding that "his constitutional right to be present at a material stage of the trial was not

violated." *People v. Grayton*, 801 N.Y.S.2d 757, 757 (2d Dep't 2005).  A judge of the New

York Court of Appeals denied Grayton permission to appeal the Appellate Division's order.

*People v. Grayton*, 6 N.Y.3d 754, 754 (2005) (Rosenblatt, *J.*).  Grayton then turned to habeas.

After a report and recommendation from a magistrate judge, the district court determined that

even if Grayton had a federal constitutional right to be present at the *Geraci* hearing, he had

expressly and impliedly waived that right.  *Grayton v. Ercole*, No. 07-cv-0485, 2009 WL

2876239, at *6 (E.D.N.Y. September 8, 2009).  On appeal, Grayton raises three main issues: 1)

whether he had a right to be present at the *Geraci* hearing; 2) whether that right was waived; and

3) whether any error was harmless.

## DISCUSSION

We review the denial of a petition for a writ of habeas corpus de novo. *Loliscio v. Goord*,

263 F.3d 178, 184 (2d Cir. 2001).  The standard we apply in our de novo review is set forth by

the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254 *et seq*.  As

relevant here, AEDPA requires that where a claim was adjudicated on the merits[3] a writ of

---

[3]  Grayton makes some argument that the state court did not decide the issue on the merits, a
suggestion which is completely unavailing. "When a federal claim has been presented to a state
court and the state court has denied relief, it may be presumed that the state court adjudicated the
claim on the merits in the absence of any indication or state-law procedural principles to the
contrary." *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011).  Section 2254(d) applies in the
absence of "reason to think some other explanation for the state court's decision is more likely"
than a decision on the merits. *Id.*  There is no such explanation here and so we apply Section
2254(d).

habeas corpus must be denied unless the state court's determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ."  28 U.S.C. § 2254(d)(1).  Grayton argues that he had a federally protected right to be present at the *Geraci* hearing, though he does not specify whether he views his claim as falling under Section 2254(d)(1)'s "contrary to" prong or its "unreasonable application" prong.  The government argues that since the Supreme Court has not decided a case that is materially indistinguishable from this one, *see Williams v. Taylor*, 529 U.S. 362, 412-13 (2000),  any analysis must spring from the "unreasonable application" prong.  We agree.  While the Supreme Court has made clear that "a defendant is guaranteed the right to be present  at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure," *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987),  it has never addressed if a *Geraci* hearing, or an equivalent, is such a stage.

Our task then in reviewing Grayton's claim is to determine first whether the right to presence at a *Geraci* hearing has been clearly established by the Supreme Court, and, if so, whether the state court acted unreasonably in applying that clearly established law.  The fact that the Supreme Court has never expressly extended the right to presence to a *Geraci* hearing does not foreclose analysis under AEDPA.  "Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt." *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004); *see also Cotto*, 331 F.3d at 251 (noting that "the lack of Supreme Court precedent addressing forfeiture of a particular constitutional right does not mean that any determination that such a fundamental right has been forfeited . . . would survive habeas review" (internal quotation marks omitted) (omission in original)); *Gilchrist v. O'Keefe*, 260 F.3d 87, 97 (2d Cir. 2001).  We can, then, and do reach the issue presented.

1. Clearly Established Law

"'A leading principle that pervades the entire law of criminal procedure is that, after indictment found, nothing shall be done in the absence of the prisoner.'" *United States v. Canady*, 126 F.3d 352, 360 (2d Cir. 1997) (quoting *Lewis v. United States*, 146 U.S. 370, 372 (1892)). The right to presence is "scarcely less important to the accused than the right of trial itself." *Diaz v. United States*, 223 U.S. 442, 455 (1912). It is "rooted to a large extent in the Confrontation Clause of the Sixth Amendment," *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (per curiam), but due process also protects the right of a defendant to "be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge," *Snyder v. Massachusetts*, 291 U.S. 97, 105-06 (1934), *overruled in part on other grounds by Malloy v. Hogan*, 378 U.S. 1 (1964). The right is not unqualified, and it does not exist where the defendant's "presence would be useless, or the benefit but a shadow." *Snyder,* 291 U.S. at 106-07. But "at all stages of the proceedings where fundamental fairness might be thwarted by [the defendant's] absence," there is a right to be present. *Faretta v. California*, 422 U.S. 806, 816 (1975).[4]

Applying these precedents, we note first that a *Geraci* hearing itself is a quasi-criminal proceeding, in which not only the admissibility of evidence is determined, but also whether a defendant has engaged in misconduct towards witnesses. There is an argument that the right to presence should attach to a *Geraci* hearing for that reason alone. But even were we unconcerned with a defendant's ability to defend against the charge of misconduct per se, a defendant would

---

[4] The government does not dispute the presumption that a *Geraci* hearing can be a stage of trial at which the right to presence can attach. *See Kentucky v. Stincer*, 482 U.S. 730, 740 (1987) (noting that where a "hearing retains a direct relationship with the trial because it determines whether a key witness will testify," it is a stage of trial).

still have a right to presence at a *Geraci* hearing because it bears a substantial relation to the "fullness of [a defendant's] opportunity to defend against the [criminal] charge." *Snyder*, 291 U.S. at 105-06. If a defendant loses his *Geraci* hearing, he loses also his right to cross examine a witness, a "'fundamental right essential to a fair trial in a criminal prosecution.'" *United States v. Dhinsa*, 243 F.3d 635, 651 (2d Cir. 2001) (quoting *Pointer v. Texas*, 380 U.S. 400, 404 (1965)).

"The opportunity for cross-examination, protected by the Confrontation Clause, is critical for ensuring the integrity of the fact-finding process. Cross-examination is 'the principal means by which the believability of a witness and the truth of his testimony are tested.'" *Stincer*, 482 U.S. at 736 (quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974)). It has been called "the greatest legal engine ever invented for the discovery of truth." *California v. Green*, 399 U.S. 149, 158 (1970) (internal quotation marks omitted). These bedrock principles are doubly important in the *Geraci* context, because a *Geraci* hearing may, by removing the truth-seeking engine of cross-examination from the trial, impair that trial's reliability. More reliable *Geraci* hearings may thus mean more reliable trials, making a defendant's presence at such a hearing not only to his benefit, but to the benefit of the court and society as well.

This is not to say that a defendant should not be found to forfeit his Confrontation Clause rights when he has committed misconduct, but only that the determination of whether he has done so should be made with fundamental fairness in mind. Just as "[t]he basic purpose of a trial is the determination of truth," *Tehan v. United States ex rel. Shott*, 382 U.S. 406, 416 (1966), so too is the purpose of a *Geraci* hearing. Argument that such a hearing should be made less reliable cannot be countenanced. A *Geraci* "hearing is no mere formality. . . . [it] plays the

9

valuable role of sentry, admitting statements not subject to cross-examination only where the requisite link between the defendant's misconduct and the witness's silence has been established." *People v. Johnson,* 93 N.Y.2d 254, 258 (1999). Such a sentry is necessary before the right to presence and to confrontation is lost. "Of course, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. But its denial or significant diminution calls into question the ultimate integrity of the fact-finding process and requires that the competing interest be closely examined." *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973) (citation and internal quotation marks omitted).

Even against this backdrop, the government argues that Grayton had no right to be present at the *Geraci* hearing. But adopting the government's position in this case would mean that a defendant's Confrontation Clause and due process rights are forfeited not at a judicial *finding* of misconduct, but at the *allegation* of misconduct. If there is no right to presence at a *Geraci* hearing, all a prosecutor need do is raise the inference of misconduct to deprive a defendant of his opportunity to cross-examine and confront the witnesses against him. A defendant's Sixth Amendment and due process rights cannot evaporate at the moment he is accused, never to be recovered if a court finds misconduct to have occurred— which, of course, it is more likely to do in his absence. As Grayton argues, there is a double punishment inflicted on a defendant who is excluded from a *Geraci* hearing, since preventing him from fully facing the charge of misconduct may well lead to the later loss of the "essential trial right" of confrontation. *Dhinsa*, 243 F.3d at 651. The Supreme Court's precedents guide us here: When the Court first considered the admissibility of prior testimony by a witness who was made

10

unavailable by misconduct, it allowed for the testimony's admission because "[t]he accused was himself personally present in court when the showing was made, and had full opportunity to account for the absence of the witness, if he would, or to deny under oath that he had kept her away." *Reynolds v. United States*, 98 U.S. 145, 160 (1878). None of the government's arguments can support the denial of such a full opportunity, nor do they justify the significant diminution or loss of rights merely at a prosecutor's charge, rather than his proof.

Indeed, none of the government's arguments compel another conclusion. It first contends that fundamental fairness was not thwarted by Grayton's absence because his counsel was present during the hearing. Though the presence of counsel may in other circumstances be relevant to the extent of a deprivation, and thus to harmlessness, there is no support for the government's suggestion that the presence of counsel is a substitute for the presence of the defendant himself where his presence is guaranteed by due process. The right is "the right to *personal* presence," *Rushen v. Spain*, 464 U.S. 114, 117 (1983) (emphasis added), and so we reject the government's contention that the presence of counsel is necessarily a sufficient vindication of the right where it exists.

The government's next argument is that the right to presence did not attach in this particular case because, in its view, Grayton's presence at the *Geraci* hearing would not have contributed to the fairness of that proceeding. In particular, the government questions whether Grayton would have been able meaningfully to assist his counsel in cross-examining the witnesses who testified at the hearing. No such individualized showing is required, however, in this circumstance: a defendant's presence will *always* contribute to the fairness of a *Geraci* hearing because it ensures a more reliable determination of whether that defendant's alleged

11

misconduct procured the witness's absence. In every case in which a *Geraci* hearing is held, the defendant will be in a unique position to know whether he—or someone else on his behalf—has in fact threatened a witness and the circumstances surrounding that misconduct if it occurred. The factual questions posed in a *Geraci* hearing are, therefore, those the defendant is best equipped to answer. *See, e.g.*, *People v. Dokes*, 79 N.Y.2d 656, 660 (1992) ("In determining whether a defendant has a right to be present during a particular proceeding, a key factor is whether the proceeding involved factual matters about which defendant might have peculiar knowledge that would be useful in advancing the defendant's or countering the People's position."); *Clark v. Stinson,* 214 F.3d 315, 322 (2d Cir. 2000) (indicating that "[i]f fact issues are presented. . . it would seem that defendant has a right to be present" (quoting 3A Charles Alan Wright, Federal Practice and Procedure § 721.1 at 12 (2d ed.1982))); *see also* Fed. R. Crim. Pro. 43(b)(3) (indicating that a defendant need not be present at "a conference or hearing upon a question of law"). In some cases, as in this one, the defendant may also be personally familiar with the witnesses and aware of any motive they might have to fabricate, providing potentially fruitful areas for cross-examination.

The government's attempt to analogize a *Geraci* hearing to the witness competency hearing in *Kentucky v. Stincer*, 482 U.S. 730 (1987), and to the *ex parte* communication between judge and juror that occurred in *United States v. Gagnon*, 470 U.S. 522 (1985), does not persuade us otherwise. In both cases, the Supreme Court held that the defendant had no constitutional right to be present at the proceeding at issue. But neither *Stincer* nor *Gagnon* impaired the defendant's fundamental right to cross-examine the witnesses against him at trial. In *Stincer*, although the defendant was not present during a hearing to determine the competency

12

of two child witnesses, the defendant later "had the opportunity for full and effective cross-examination" of those witnesses during the trial itself.  482 U.S. at 744.  And in *Gagnon,* the judge had a brief *ex parte* communication with a juror who had expressed concern that one of the defendants had been sketching the jurors during trial.  470 U.S. at 523-24.  That communication did not involve discussion of any of the evidence presented in the case against the defendant, but was rather an "inquir[y] into . . . a minor occurrence."  *Id.* at 527.  Therefore, in neither *Stincer* nor *Gagnon* did the defendant's absence from the proceeding bear a "reasonably substantial" relation to the "fullness of his opportunity to defend against the [criminal] charge."  *Snyder,* 291 U.S. at 105-06.  By contrast, in this case, the *Geraci* hearing had a direct impact on Grayton's ability to defend himself:  the trial judge's determination that Grayton procured Osario's absence through his misconduct permitted the prosecutor to admit Osario's grand jury testimony and resulted in the forfeiture of Grayton's right to cross-examine Osario, a key witness for the prosecution.

The government's next line of argument is also deeply flawed.  The government suggests that because some courts have held there is no federal constitution right to attend a *Sandoval* hearing, *see People v. Sandoval*, 34 N.Y.2d 371 (1974), that there is, analogously, no right to attend a *Geraci* hearing.  This argument is without merit. In New York, "[a] *Sandoval* hearing is held, upon a defendant's request, to determine the extent to which he will be subject to impeachment by cross-examination about prior bad acts if he testifies."  *Williams v. McCoy*, 7 F. Supp. 2d 214, 220 (E.D.N.Y. 1998).  First, we note the government makes no argument as to why the two proceedings are or should be considered analogous, but only suggests that they are.  Second, our task in habeas is limited to applicable Supreme Court precedent, and so these cases

13

cannot factor into our determination of whether the Supreme Court has clearly established a right to presence at a *Geraci* hearing. But even if the cases the government presents were cognizable, we would reject their applicability to this case. A *Geraci* hearing is different in kind than a *Sandoval* hearing because of the nature of the right at stake. A defendant facing a *Geraci* hearing is facing the possibility that the crucial trial right of confrontation will be forfeited. A *Sandoval* defendant, who himself requested the hearing, faces no such forfeiture; there is no federal constitutional right not to be impeached. The lack of a right to be present in such circumstances cannot support the denial of the right to presence in the *Geraci* context.[5]

A defendant's presence at a *Geraci* hearing has a substantial relationship to his ability to defend himself, both against the quasi-criminal charge of misconduct and the actual criminal charge he is facing. Fundamental fairness is surely thwarted by trying a defendant for misconduct in his unwaived absence and then punishing him with a forfeiture of crucial trial rights, without ever having provided him an opportunity to contest the charge in person. The federal Constitution protects the right to presence at a *Geraci* hearing, and a state court that determined otherwise would be in error.

2. Unreasonable Application.

Our task in habeas does not end at a finding of error, because the writ may only issue where the state court's application of the law was not only wrong, but unreasonable. "Under the

---

[5] We are mindful of "the maxim that no one shall be permitted to take advantage of his own wrong," *Reynolds*, 98 U.S. at 159, and of the possibility that a defendant may be *too* successful in his attempts to intimidate a witness, such that a witness may refuse to testify even in the *Geraci* hearing with the defendant present. While this case does not present us with the question of what constitutes the outer limits of a judge's power to handle such a refusal, we note that available remedial means include courtroom closure, additional deputies during testimony, or other out-of-court police protection for witnesses.

14

'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor,* 529 U.S. 362, 413 (2000). The Appellate Division here correctly identified the governing legal principle in its decision as the right to be present when it held that Grayton's "constitutional right to be present at a material stage of the trial was not violated." *People v. Grayton*, 801 N.Y.S.2d 757, 757 (2d Dep't 2005). There are two possible readings of such a holding, however: that the right was not violated because it does not exist, or that the right was not violated because it was waived. Where, as here, "a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 131 S. Ct. at 784; *see also Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005) (noting that where state courts summarily deny relief on the merits, "we must focus on the ultimate decisions of those courts, rather than on the courts' reasoning" (quoting *Aeid v. Bennett*, 296 F.3d 58, 62 (2d Cir. 2002)) (internal quotation marks omitted)). Though we hold that there is a right to be present at a *Geraci* hearing, we find that it was reasonable for the state court to deny relief on the second ground, waiver. Accordingly, we do not address whether it would have been reasonable for the state court to have denied relief in the absence of waiver.

3. Waiver

It was reasonable for the state court to deny relief to Grayton, because he waived his right to presence at the *Geraci* hearing. Though neither Grayton nor his counsel expressly waived his right to be present, at a minimum, it would be reasonable for the state court to have found an implied waiver of that right.

15

Grayton argues that waiver could not have been made by his counsel, **[Blue 46]** but both the Supreme Court and our circuit have spoken clearly on this issue. "What suffices for waiver depends on the nature of the right at issue . . . . For certain fundamental rights, the defendant must personally make an informed waiver. For other rights, however, waiver may be effected by action of counsel." *New York v. Hill*, 528 U.S. 110, 114 (2000) (citations omitted). Decisions pertaining to the conduct of the trial belong to the attorney*, id.,* as do those that "concern strategic and tactical matters." *United States v. Plitman*, 194 F.3d 59, 63 (2d Cir. 1999). We have specifically included waiver of Confrontation Clause rights in such a category, holding that "defense counsel may waive a defendant's Sixth Amendment right to confrontation where the decision is one of trial tactics or strategy that might be considered sound." *Id.* at 64. Though direct waiver is preferable, our cases have also "explicitly repudiated a rule . . . that would require a defendant's personal statement in court to bring about a constitutionally valid waiver of his right to be present." *Clark,* 214 F.3d at 324. This body of law establishes that the right to be present may be, in some circumstances, waived by counsel, and we decline appellant's invitation to revisit it.

As to whether counsel did in fact make such a waiver in this case, the government urges us to find that defense counsel may have waived Grayton's presence because of the possibility that Grayton's presence at the hearing would have provided the court with definitive evidence that it was indeed Grayton of whom Osario was so afraid. Grayton responds that "[n]o valid strategic reasons justifying [his] absence from the *Geraci* hearing was voiced by his counsel." We agree that the record does not reflect counsel's reason for not objecting to his client's exclusion, but the most obvious reason for such a waiver— that suggested by the government—

16

is unlikely to ever make its way into the record. An attorney can hardly inform the court that he waives his client's presence for fear that his presence will create demonstrative evidence of misconduct. There is a very real possibility in all but the most egregiously called for *Geraci* hearings that a defendant's presence will only confirm a court's suspicions, and a lawyer may reasonably decide that such is a risk that he and his client cannot bear. We cannot say that waiver of presence in such circumstances is not the sort of trial strategy and tactical matter that our precedent places in the hands of counsel.

Turning to whether counsel, having the power to do so, did actually waive in this case, we find that there was no express waiver made by counsel. The government makes much of defense counsel's pre-hearing statement, "my client is produced, but he's not present. I waive his appearance for the purpose of conference for right now." But what the government does not discuss nor disclose in its briefing is that Grayton was present in the courtroom *after* this statement was made. After this waiver, but before the *Geraci* hearing began, the court "note[d] for the record that the defendant [was] present." Shortly after, the court broke for lunch; when it reconvened, defense counsel was present "without his client." Only at this point did the prosecutor request, and the court grant, the *Geraci* hearing. Defense counsel's express waiver of his client's presence cannot extend past the point the defendant was actually present in court. After Grayton appeared, his counsel's waiver "for the purpose of conference for right now" ended and so did not extend to the *Geraci* hearing.

Even in the absence of an express waiver, we find that a state court conclusion that Grayton and his counsel both implicitly waived the right to be present would be reasonable. "A waiver of a constitutional right must be voluntary, knowing and intelligent, that is, the act of

17

waiver must be shown to have been done with awareness of its consequences." *United States v. Morgan*, 51 F.3d 1105, 1110 (2d Cir. 1995). Such "[a] voluntary and knowing waiver of the right to be present can be 'implied from the defendant's conduct.'" *Clark,* 214 F.3d at 323 (quoting *United States v. Nichols*, 56 F.3d 403, 416 (2d Cir. 1995)). A right may also be waived by counsel's failure to object: "If a defendant is entitled . . . to attend certain stages of the trial and those stages take place without the defendant's presence, the defendant or his counsel must object at the time of the violation or the defendant's right to be present will be deemed waived." *United States v. Jones*, 381 F.3d 114, 122 (2d Cir. 2004).

It would be reasonable for the state court to have found that constitutionally valid waiver was made by implication. Neither appellant nor his counsel ever objected to the former's exclusion from the hearing. Defense counsel not only repeatedly failed to object, but also expressly acquiesced in the court's statements that Grayton would not be present. When the court told defense counsel, "certainly your client is not going to be present," counsel replied "[i]t's understood, Your Honor." Under these circumstances, "[t]he judge could reasonably conclude that if [Grayton] was being deprived of any right . . . his counsel would have said so." *Cardinal v. Gorczyk*, 81 F.3d 18, 20 (2d Cir. 1996). Defense counsel had a right to waive Grayton's presence, and the state court would have not have been unreasonable to conclude that he did so.

The state court could also have found that appellant himself implicitly waived his right to presence. Grayton argues that he had no way of knowing that a *Geraci* hearing was to take place and so he could not have waived his right to presence. But we have squarely held that where a defendant does not assert his right to be present at a proceeding, any objections to his

18

exclusion are waived, even if the defendant does not know about the proceeding until after it has taken place. In *Jones*, we held that a defendant waived his right to be present at his attorney's disqualification hearings because he "never objected to his absence from the . . . hearings, even though he was present during the subsequent hearing in open court when the court made its ruling." 381 F.3d at 122; *see also United States v. Rosario*, 111 F.3d 293, 299 (2d Cir. 1997) (finding waiver of the right to be present when neither defendant nor counsel objected to defendant's exclusion). Though the defendant in *Jones*, like appellant in this case, argued that he did not know the hearings were taking place, and so could not have objected, we nonetheless found waiver because he "could have objected *after* the alleged violation took place." 381 F.3d at 122. Our precedent is in line with the Supreme Court, which has likewise indicated that failure to assert the right to be present will waive it. *See Gagnon,* 470 U.S. at 528 (finding Rule 43 right to presence waived where "[n]o objections of any sort were lodged, either before *or after*" the alleged violation) (emphasis added)).

Grayton was undisputedly present in court when the court gave a detailed account of its findings regarding his misconduct. The court discussed the reliability of the previous testimony; Osario's demeanor during the hearing, along with her testimony and credibility; the relevant legal standards; and its ultimate determination that "Osario was intimidated as a result of threats directed from [Grayton] . . . and that Grand Jury testimony of Ms. Osario should be admitted under [the] People's direct case." Though Grayton may not have been able to object during or before the hearing, the state court was not required to "ignore[] the fact that [he] could have objected after the alleged violation took place." *Jones*, 381 F.3d at 122 (emphasis omitted).

19

Grayton does not address this precedent, but claims he cannot have been expected to object, because he did not know what a *Geraci* "hearing was, what the consequences of such a hearing could mean to his case, or what the legal consequences were of the prosecution's evidence." The record belies such an argument. On January 7, 2003, before voir dire even began, with Grayton present, defense counsel indicated that he had been informed by the prosecutor that witnesses had been threatened. He also indicated that the prosecutor had not yet connected these threats to appellant, which the prosecutor confirmed. The court, in response, said:

> And I would just note, for the defendant's benefit, since the issue has been raised that in the event there is a witness who has previously given inculpatory information then on the witness stand declines to respond to questions and it can be established that that refusal to respond and cooperate is a direct result of threats or other actions taken by the defendant meant to intimidate those witnesses that there are ways in which that can be determined and that evidence previously given if under oath can be used instead of the live testimony which means that you would not be successful in avoiding the evidence for one thing and of course, there's always the possibility of a separate prosecution, should there be such action taken.

Grayton, then, was explicitly warned, in open court, in plain language, that there were ways in which misconduct related to witnesses could be ferreted out, and that if misconduct was found to have occurred, a witness's previous testimony could be admitted in place of his or her live testimony. Grayton was also present in court alongside Osario when her counsel stated that Osario was "extremely frightened . . . she's very much concerned and frightened of having the defendant's family present in the Court." The court thoroughly warned appellant about the circumstances which would precipitate a *Geraci* hearing, and he was present later when those events began to occur. He cannot now claim to have had no idea of the nature of the hearing or the consequences it might have had.

20

It may be true, as Grayton argues, that he had not "an inkling that he had a constitutional right to be present" at the hearing. But that is not what our law requires to find waiver. The constitutional waiver must be knowing and voluntary, but it can be "implied from the defendant's conduct." *United States v. Nichols*, 56 F.3d 403, 416 (2d Cir. 1995). "[O]nly minimal knowledge on the part of the accused is required when waiver is implied from conduct." *Cohen v. Senkowski*, 290 F.3d 485, 491 (2d Cir. 2002). Such minimal knowledge means that a defendant need only be aware of the "nature of the proceeding, not the abstract existence of the right itself." *Id.* at 493. Our reading of the record demonstrates that Grayton was warned that such a proceeding was possible in his case, he was present in court when the events he was told might precipitate the hearing began to occur, and he was present during an extremely detailed discussion by the court of the hearing and its results. Grayton had at least minimal knowledge of the proceeding; if he objected to his exclusion, it was incumbent upon him to have made that known. It is not unreasonable to call failure to do so waiver.

This is so even in light of the trial court's repeated erroneous statements about whether Grayton could be excluded from the hearing. Grayton makes no argument that he affirmatively believed he had no right to attend the hearing, something our cases have indicated may militate against a finding of waiver. *See, e.g.*, *Tankleff v. Senkowski*, 135 F.3d 235, 247 (2d Cir. 1998) (finding waiver where "[t]here [was] no indication that [the defendant] or his lawyers were under the mistaken belief that he could not attend the *in camera* sessions"); *Cardinal*, 81 F.3d at 19 (finding waiver where "[t]he trial judge did not purposefully exclude [the defendant] from the selection proceeding"). In *Cohen*, we found a defendant had waived his right to be present when, as in this case, he was "fully aware of the . . . [proceeding] but did not object to it nor ask

21

to attend." 290 F.3d at 493. We declined

> to hold as a matter of law . . . that not knowing that one could attend is the same thing as believing that one could *not* attend. [The defendant] gave no indication at the time that he had any desire to attend the [proceeding], nor does his affidavit address whether he asked his attorney if he could. Indeed, the record is barren of any evidence that [the defendant] believed he was excluded from the pre-screening; it simply establishes that [the defendant] did not know one way or the other.

*Id.* (emphasis in original). While the judge in this case, unlike in *Cohen,* did purposely exclude Grayton, there is no evidence apparent in the record before us to suggest that Grayton knew the judge had precluded him from attending. Indeed, all of the judge's misstatements about the right to presence occurred when Grayton was not in the courtroom, and at no place in his appeal does Grayton argue that he *believed* he could not attend. The most the record reflects is that Grayton did not affirmatively know he had a right to attend, something our case law does not require for waiver.

As to the possibility that counsel himself misapprehended the scope of the right, Grayton likewise makes no claims that his lawyer told him he had no right to attend the hearing. He argues only that neither the court nor his counsel advised him of his right to be present, an argument which puts him squarely within *Cohen*'s holding. In addition, we see no evidence in the record that defendant's counsel was under a mistaken belief about Grayton's right to presence. Nothing about defense counsel's acquiescence in the court's comments suggests that he agreed with the judge's misstatement of the law, as opposed to simply trying to effectuate a waiver without unduly prejudicing his client's interests by saying too much. The state court would not be unreasonable in determining that both defense counsel and Grayton himself impliedly waived his right to presence.

22

Because we find that the state court could reasonably conclude that Grayton waived his right to be present at the *Geraci* hearing, we need not address what consequence would obtain if a defendant were wrongfully excluded from such a hearing in the absence of waiver. The government insists that such an exclusion would be subject to harmless error review; Grayton maintains that it would constitute a structural error. Although our Court has never directly addressed this question, *see Perkins v. Herbert*, 596 F.3d 161, 173 n.11 (2d Cir. 2010), we note that such a determination would depend "not only [on] the right violated" in a particular case—in terms of whether Confrontation Clause or Due Process concerns are primarily at issue—but also on "the particular nature, context, and significance of the violation." *Yarborough v. Keane*, 101 F.3d 894, 897 (2d Cir. 1996).

We have examined appellant's remaining arguments and find them to be without merit.

**CONCLUSION**

There is a federal constitutional right to be present at a *Geraci* hearing, and this right has been clearly established by the Supreme Court. We do not reach whether deprivation of that right by the state court would have been an unreasonable application of that Supreme Court law had Grayton and his counsel not impliedly waived it. They did so. Accordingly, the judgment of the district court in denying the writ is AFFIRMED.

BARRINGTON D. PARKER, *Circuit Judge*, concurring in the judgment:

I agree that Grayton had a clearly established right to be present at his *Geraci* hearing. *People v. Geraci*, 85 N.Y.2d 359, 367 (1995). I write separately to emphasize that, in my view, this right is essentially a Sixth Amendment Confrontation Clause right. *Compare* Majority Op. at 11 (stating that Grayton's "presence is guaranteed by due process."). Like most trial rights, it is subject to waiver. *See Peretz v. United States*, 501 U.S. 923, 936 (1991). However, because it is not clearly established federal law that defendants must participate personally in the waiver, it was not unreasonable for the Appellate Division to conclude that counsel could, and did, waive his client's right to be present at the hearing. Accordingly, I concur in the judgment.

In *United States v. Gangon*, 470 U.S. 522, 526 (1985) (per curiam), the Supreme Court held that a defendant's right to be to present at trial – and to confront evidence and cross examine witnesses – is rooted in the Confrontation Clause. The Court went on to note that the right is also protected by the Due Process Clause in situations where a defendant is not actually confronting witnesses or evidence against him. *Id*; *see also United States v. Jones*, 381 F.3d 114, 121-22 (2d Cir. 2004) (same). Two years later in *Kentucky v. Stincer*, 482 U.S. 730, 739-45 (1987), the Supreme Court elaborated the test for identifying the constitutional source of the right to be present at a given stage of trial. The Supreme Court held that the Sixth Amendment is the source of the right if the defendant's exclusion would interfere with his opportunity for effective cross-examination. *Id.* at 739; *see* 744 n.17 ("The appropriate question [in assessing a Sixth Amendment right to be present] is whether there has been any interference with the defendant's opportunity for effective cross-examination."). The Court then noted that, if the right to confront and cross examine is not implicated, the question becomes one under the Due

Process Clause: whether a defendant's "presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." *Id*. at 745 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-106 (1934)). Applying these tests, the Supreme Court found no Sixth Amendment violation in the defendant's exclusion from a hearing concerning the competency of a prospective child witness because the defendant retained the opportunity to cross-examine the witness – repeating all of the questions asked in his absence – during trial. *Id*. at 741, 744. Likewise, the Court found no due process violation in the defendant's exclusion from the competency hearing because the defendant's presence would not have been "useful." *Id*. at 747. The Supreme Court has not retreated from these principles.

Because this appeal implicates the opportunity for effective cross-examination rather than a generalized "full opportunity to defend," the analysis is driven, in my view, by Confrontation Clause jurisprudence. Although the Confrontation and the Due Process Clauses may provide somewhat overlapping protections, in practice they operate quite differently. The ultimate goal of the Confrontation Clause "is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands . . . that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Crawford v. Washington*, 541 U.S. 36, 61 (2004). As the Supreme Court went on to note, "[w]here testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of reliability." *Id*. (internal quotation marks omitted). In contrast, what satisfies due process is not so focused and is subject to a wider range of reasonable judgments. *See Snyder*, 291 U.S. at 117 ("What is fair in one set of circumstances

2

may be an act of tyranny in others.").  This difference takes on special importance on habeas review because "the range of reasonable judgment[s]" a state court may exercise in applying federal law "can depend in part on the nature of the relevant rule."  *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

A finding of misconduct at a *Geraci* hearing extinguishes a defendant's Confrontation Clause rights, leading to the admission of unconfronted testimony from a threatened witness.  A *Geraci* hearing is a "truth-seeking process" at which questions of fact are decided through evidence.  *Geraci*, 85 N.Y.2d at 367.  To initiate a *Geraci* hearing, the government alleges specific facts that "demonstrate a distinct possibility that a criminal defendant's misconduct has induced a witness' unlawful refusal to testify . . . [or] disappearance or demise."  *Id*. at 363, n.1 (internal quotation marks and alterations omitted).  If, as here, the court concludes that the defendant procured the witness' unavailability through his intentional misconduct, the unavailable witness' prior, unconfronted testimony may be admitted in lieu of live, confronted testimony.[1]

It is obvious that Grayton's absence from the *Geraci* hearing interfered with his opportunity for effective cross-examination.  As a direct consequence of the trial court's finding of misconduct, Jessica Osario's incriminating grand jury testimony was read to the jury as

---

[1]    This result – "forfeiture by wrongdoing" – is rooted in a common law tradition to admit statements of an absent witness who was "detained" or "kept away" by the "means or procurement" of the defendant.  *See Giles v. California*, 554 U.S. 353, 359 (2008); *Davis v. Washington*, 547 U.S. 813, 833 (2006) ("one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation.").  This doctrine balances the risk of admitting unconfronted testimony against the greater risk of permitting defendants to disrupt trial by causing witnesses to be unavailable and then benefitting from this misconduct.

evidence of guilt. Indeed, these circumstances present a quintessential example of interference with an opportunity for cross examination: the hearing concerned Grayton's future right to cross-examine a witness at trial, and his right was deemed lost based on evidence presented at a hearing he was not permitted to attend.[2] Like the majority, I conclude that Grayton had a clearly established federal constitutional right to be present at the *Geraci* hearing. But I believe this right is guaranteed by the Sixth Amendment, a conclusion in conformity with a number of recent Supreme Court cases examining the Confrontation Clause. *See Bullcoming v. New Mexico*,131 S. Ct. 2705 (2011); *Giles*, 554 U.S. at 353; *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009); *Davis*, 547 U.S. at 813; *Crawford*, 541 U.S. at 36. I do not believe that cases employing a generalized due process analysis are the key to this inquiry.

I also conclude – like the majority – that AEDPA deference attaches to the Appellate Division's determination that Grayton waived his right to be present at the hearing. However, although the majority concludes that the Appellate Division could have reasonably concluded that Grayton personally waived his right to presence, *see* Majority. Op. at 18-19, I disagree and take a somewhat different path.[3] Waiver is the knowing and voluntary relinquishment of a known right. *United States v. Olano*, 507 U.S. 725, 733 (1993). To be voluntary, the

---

[2] As Grayton points out in his brief, had he been present at the *Geraci* hearing, he could have informed the court that he was in a close, possibly romantic, relationship with Ms. Osario, which might have explained why someone asked her to visit him at Riker's Island. Appellant Br. at 23-24.

[3] The district court denied Grayton's Certificate of Appealability as to a variety of issues, including whether he personally effected an implied waiver of his right to be present. *See* Application. for Certificate of Appealibilty, March 12, 2010, ECF No. 19; Pet'r. Mem. of Law in Support of Pet. of Appealability, Feb.11, 2010, ECF No. 18. The majority exercises its discretion to reconsider the question of personal waiver. *See* 28 U.S.C. § 2253(c)(1) (permitting a "circuit justice or judge" to issue a certificate of appealability).

4

relinquishment of the right must have been "the product of a free and deliberate choice." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Nothing in this record indicates that Grayton's absence from the *Geraci* hearing was voluntary. Grayton was never offered the opportunity to attend the hearing. He was in the custody of the State when the prosecution requested a *Geraci* hearing and he remained in custody for the duration of the hearing. Thus, it simply cannot be inferred from the record that Grayton's absence was a voluntary act.[4] The majority side-steps this by engaging in a waiver-by-implication analysis. Majority Op. at 21. But that approach fails to address, and cannot accommodate, the absence from the record of any indication of voluntariness.[5]

Were it clearly established federal law, as Grayton contends, that his right to be present at a *Geraci* hearing is a right that can be waived *only* by his personal participation, my inquiry might end. However, the Supreme Court has held that, for some rights, "waiver may be effected by the action of counsel." *New York v. Hill*, 528 U.S. 110, 114 (2000)

> What suffices for a valid waiver depends on the nature of the right at issue
> Whether the defendant must participate personally in the waiver; whether
> certain procedures are required for waiver; and whether the defendant's

---

[4]    The issue of voluntariness is a legal question requiring independent federal determination. *Arizona v. Fulminante*, 499 U.S. 279, 287 (1991). The Supreme Court has held that a constitutional right can be impliedly relinquished even where the defendant makes no affirmative statement. *See e.g.*, *Taylor v. United States*, 414 U.S. 17, 20 (1973) (per curiam) (finding waiver where a defendant purposefully "flees" from the court during trial); *Illinois v. Allen*, 397 U.S. 337, 343 (1970) (finding waiver where the defendant has control over whether he misbehaves and is removed from the court on account of such misbehavior). However, there can be no finding of voluntariness if a defendant's will is overborne. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973).

[5]    The problematic nature of the majority's approach is further complicated by the fact its analysis is more akin to a forfeiture rather than a waiver analysis. *See generally Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999). However, I don't believe a purposeful exclusion becomes a knowing, voluntary waiver by virtue of a defendant's failure to object after the fact. *Cf. Fillippon v. Albion Vein Slate Co.*, 250 U.S. 76, 82 (1919) ("It is not correct . . . to regard the opportunity of afterwards excepting to the instruction and to the manner of giving it as equivalent to an opportunity to be present during the proceedings.").

5

choice must be particularly informed or voluntary, all depend on the right at stake.

For certain fundamental rights, the defendant must personally make an informed waiver. For other rights, however, waiver may be effected by action of counsel . . . . As to many decisions pertaining to the conduct of the trial, the defendant is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

*Id*. at 114-115 (internal quotation marks, citations and alterations omitted).

Since this case involves an application for a writ of habeas corpus, in assessing the reasonableness of a state court decision, we may only consider the precedents of the Supreme Court when determining what was "clearly established Federal law" within the meaning of AEDPA. *See Parker v. Matthews*, 132 S.Ct. 2148, 2155 (2012) (per curiam). No Supreme Court case law has decided whether counsel may waive his client's right to be present at a *Geraci* hearing, and the Supreme Court has not elaborated a test to distinguish between "fundamental" and "other" rights. *Hill*, 528 U.S. at 114. Indeed, the Supreme Court has taken "no position on the standards necessary to demonstrate . . . forfeiture" by wrongdoing. *Davis*, 547 U.S. at 833.

Because this lack of controlling Supreme Court precedent is decisive, I join the majority in concluding that the Appellate Division did not unreasonably conclude that counsel could, and did, waive Grayton's right to be present at the *Geraci* hearing.[6]

---

[6] The majority responds to Grayton's contention that waiver could not have been made by his counsel by stating, "the Supreme Court and our circuit have spoken clearly on this issue." Majority. Op. at 16. I disagree and respectfully note that this Court has never decided "whether and under what circumstances defense counsel may waive a defendant's right to confrontation." *United States v. Plitman*, 194 F.3d 59, 63 (2d Cir. 1999).

6