12-256-cv
Ramos v. Racette

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2012

(Argued: June 24, 2013    Decided: August 9, 2013)

Docket No. 12-256

- - - - - - - - - - - - - - - - - - - -x

RAMON RAMOS,

                Petitioner-Appellant,

     - v.-                            12-256

STEVEN RACETTE,

                Respondent-Appellee.

- - - - - - - - - - - - - - - - - - - -x

Before:        JACOBS, Chief Judge, CARNEY and DRONEY, Circuit Judges.

During his trial for multiple rape-related crimes, Ramon Ramos elected to appear pro se *and* to absent himself from the proceedings. The trial judge introduced Ramos's standby counsel to the voir dire panel as Ramos's lawyer. After a recess, the court attempted to correct the mischaracterization by reintroducing counsel as Ramos's "legal advisor." Following his conviction, Ramos filed for

a writ of habeas corpus in the United States District Court for the Eastern District of New York (Gleeson, J.), arguing that the brief introduction violated his Sixth Amendment right to self-representation.  We affirm the denial of the writ because there is no clear Supreme Court precedent controlling this case, and because the introduction did not substantially impair his right to self-representation.

SALLY WASSERMAN, New York, NY, for Appellant.

JOHNNETTE G. A. TRAILL (John M. Castellano, on the brief), Queens County District Attorney's Office, Kew Gardens, NY, for Appellee.

DENNIS JACOBS, Chief Judge:

Ramon Ramos appeals from the judgment of the United States District Court for the Eastern District of New York (Gleeson, J.) denying his petition for a writ of habeas corpus.  Charged with first-degree rape, first-degree sodomy, and second-degree burglary in state court, Ramos elected to forego counsel and to absent himself from the proceedings in protest.  Shortly thereafter, the trial judge introduced Ramos's standby counsel to the jury as his attorney--a mischaracterization that the court attempted to correct by reintroducing him as a "legal advisor."  Ramos

2

argues that this violated his Sixth Amendment right to self-representation. We affirm because the state proceeding did not result "in a decision that was contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). And the Supreme Court case on which Ramos relies, McKaskle v. Wiggins, fairly read, does not support his position because standby counsel's extremely limited participation was "simply not substantial or frequent enough to have seriously undermined [Ramos's] appearance before the jury in the status of one representing himself." 465 U.S. 168, 187 (1984). The judgment is affirmed.

## BACKGROUND

In July 1993, a young woman reported to police that she had been raped. A sexual assault kit was used to collect evidence at the local hospital in Queens. The case went cold for some time. In March 1994, Ramos was arrested for burglary, also in Queens. Although police suspected his involvement in the rape, the victim was unable to identify him in multiple photo arrays and lineups, and the case went cold again.

3

That changed in October 2001, when state officials procured a DNA sample from Ramos, who was then serving time for a third-degree robbery conviction.  In July 2002, Ramos's DNA was matched to the semen from the victim's sexual assault kit.  Ramos was indicted for the rape in May 2003.

Ramos's first trial in New York Supreme Court ended in a mistrial when the prosecutor took ill.  During those truncated court proceedings in 2005, Ramos evinced a desire to represent (and eventually absent) himself.  Ramos advised the court that he would appear pro se, except for certain challenges to DNA evidence, which he wanted his standby counsel, John Scarpa, to make.  However, during the Sandoval hearing,[1] Ramos expressed disgust with the court and the proceedings, and a distrust of lawyers based in part on his perception that unchallenged police perjury had led to a prior conviction.  He refused counsel and refused to stay:

> I will not sit here and have this court convict me for wrongs done by the police. . . .  I do not wish to attend this trial. . . .  I am a minority and I cannot afford a lawyer—it seems the system would like to take

---

[1] In New York, "a Sandoval hearing is held, upon a defendant's request, to determine the extent to which he will be subject to impeachment by cross-examination about prior bad acts if he testifies." Grayton v. Ercole, 691 F.3d 165, 173 (2d Cir. 2012) (quotation marks omitted).

4

> advantage but after being convicted here and serving 15 to life based on the fact that the court protected a police officer from having perjured himself, I am not going to go through it and I respectfully refuse to attend any further of my trial and conviction. Let it go on without me. . . . I want to make it clear that I do not wish an attorney for me. What I feel is happening, there is corruption going on in the system, corruption going on.

Ramos v. Racette, No. 11-CV-1412, 2012 WL 12924, at *2-3 (E.D.N.Y. Jan. 4, 2012) (quoting the trial transcript). The court then instructed Scarpa to act as counsel in Ramos's absence, explaining, "[w]e can't have an empty defense chair and table, so it's a good thing that you are advisory counsel because now you are back in the box . . . . [F]rom this point on, you are the attorney for the defendant." Id. at *3. However, the trial prosecutor missed three consecutive days with illness before the jury was sworn in, and the court declared a mistrial.

The retrial was held over five days from January 3 to 10, 2006. On the first day, Ramos indicated that he was unhappy with the new legal advisor assigned to his case, Russell Rothberg. Although Ramos had not objected to Scarpa's replacement when it occurred, he now insisted that he wanted Scarpa back. The court informed him that "Mr. Rothberg . . . has been on the case for the past

5

month . . . and you, frankly, don't have a say in the matter." Id. at *4. Ramos made clear that he would protest the trial if Rothberg were involved, and the court allowed Ramos to leave the courtroom.

After Ramos went to his cell, Rothberg asked the court to clarify his role: "Judge, just so the record is absolutely clear, I know that the Court has made the inquiry of the defendant who has voluntarily absented himself from the courtroom, so again my status now changes from legal advisor to counsel for the defendant?" Id. at *5. The court confirmed that "[f]or the purposes of the trial, and for the jury's edification, obviously you have to be referred to as the defendant's attorney, yes, or you are representing the defendant." Id. The jury was brought into the courtroom, and the court introduced Rothberg to the jury as "the attorney for the defendant." Id.

The prosecutor returned from the lunch break worried, and suggested to the court that a defendant had a constitutional right both to appear pro se and to absent himself from trial without representation. The prosecutor advised that the court could not "force [Ramos] to have Mr. Rothberg represent him merely because he [wanted] to go pro se and absent himself." Id. at *6.

6

After this exchange, the court ordered Ramos returned to court.  Ramos confirmed, again, that he wished to appear pro se without any representation from Rothberg.  He declared that he wanted to "take [his] chances with appeal," and voluntarily returned to his cell.  Id.

The prosecutor asked the court to clarify for the jury that Ramos was actually representing himself, but the request strangely was denied.  Instead, the court obliquely informed the jury that "Mr. Rothberg has been appointed by the Court to be available to serve as a legal advisor to Mr. Ramos."  Id.  Jury selection continued.

Before each day of trial, Ramos was asked whether he would like to participate in the proceedings.  Each day, Ramos elected to remain in the holding cell.  After the prosecution rested, the court charged the jury, including an instruction to draw no inference from the defendant's absence.  On January 10, 2006, the jury returned a verdict of guilty on all counts.

Ramos appealed through the state court system, arguing that his right to self-representation had been abrogated.  The Second Department denied the appeal: "Contrary to the defendant's contention, he was not denied [his] right [to

7

self-representation] when the court appointed a new attorney to act as standby counsel." People v. Ramos, 877 N.Y.S.2d 177, 178 (2d Dep't 2009). The New York Court of Appeals granted Ramos leave to appeal, People v. Ramos, 13 N.Y.3d 748 (2009), but subsequently affirmed the Second Department's order without taking up the Sixth Amendment issue. People v. Ramos, 13 N.Y.3d 881, 881-82 (2009). Reargument and reconsideration were denied. People v. Ramos, 14 N.Y.3d 794 (2010).

On March 10, 2011, Ramos petitioned pro se for a writ of habeas corpus in the United States District Court for the Eastern District of New York (Gleeson, J.), presenting six claims for relief. Ramos, 2012 WL 12924, at *9. The court denied the petition. Id. at *29. Ramos appeals from that judgment. The only question now before us is whether his Sixth Amendment right to self-representation was violated in the state trial.

**DISCUSSION**

**I**

We review the denial of a habeas petition de novo. Sweet v. Bennett, 353 F.3d 135, 139 (2d Cir. 2003). "An

8

application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim [either] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  This standard protects against intrusion of federal habeas review upon "both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights."  Id. at 787 (internal quotations omitted); see id. at 786 ("If this standard is difficult to meet, that is because it was meant to be.").

9

Ramos's primary argument on appeal is that his Sixth Amendment right to self-representation was violated when the 2006 trial court initially disregarded his request to appear pro se, assigned counsel during voir dire, and introduced Rothberg to the jury as Ramos's counsel.

The fleeting imposition of counsel upon a pro se defendant who has elected to abstain from participating at trial is a matter of first impression in this Court. Critically, the Supreme Court has not specifically addressed it, either. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." Knowles v. Mirzayance, 556 U.S. 111, 122 (2009) (quotation marks omitted); see 28 U.S.C. § 2254(d). Ramos can point to no Supreme Court case analyzing whether the unwanted participation of standby counsel violated the Sixth Amendment rights of a pro se defendant asserting an absentee protest defense. In Davis v. Grant, we called for further guidance from the Supreme Court on appointment of counsel for pro se defendants who are forcibly absented, 532 F.3d 132, 149-50 (2d Cir. 2008); the same gap exists with respect to pro se defendants like

10

Ramos who voluntarily absent themselves, and who thus (as it were) "disappear" pro se.

Given the lack of Supreme Court guidance in this area, "fairminded jurists" could reasonably support the state court judgment. See Harrington, 131 S. Ct. at 786. We decline to grant a writ of habeas corpus in the absence of "clearly established Federal law" that requires it. The Supreme Court authority on which Ramos relies does not support his claim, let alone do so with the requisite clarity.

**II**

Ramos argues that McKaskle v. Wiggins, 465 U.S. 168 (1984), constitutes the Supreme Court precedent he needs. However, analysis of that case confirms that Ramos's self-representation was not substantially disturbed by the court's brief introduction of counsel.

The Supreme Court has instructed that a pro se defendant has a right to maintain control over the case that the defendant wants to present to the jury personally. McKaskle, 465 U.S. at 178. "[O]nce a defendant has knowingly and intelligently waived her right to counsel, a

[trial] court should not interfere with the defendant's choice, even though it 'may sometimes seem woefully foolish to the judge.'" Torres v. United States, 140 F.3d 392, 402 (2d Cir. 1998) (quoting United States v. Curcio, 694 F.2d 14, 25 (2d Cir. 1982)). "[P]articipation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself." McKaskle, 465 U.S. at 178.

However, a pro se defendant's control over the defense is not limitless. In McKaskle, the Supreme Court considered whether unsolicited participation of standby counsel violated a defendant's right to defend pro se. Although the trial court permitted the defendant to appear pro se, it also allowed standby counsel an occasional interjection. Standby counsel "made motions, dictated proposed strategies into the record, registered objections to the prosecution's testimony, urged the summoning of additional witnesses, and suggested questions that the defendant should have asked of witnesses"--over the explicit objections of the defendant. Id. The Court held that the intrusions of the standby counsel "were simply not substantial or frequent enough to have seriously undermined [the defendant's] appearance

before the jury in the status of one representing himself." 465 U.S. at 187.

Here, the court introduced Rothberg to the jury as "the attorney for the defendant" notwithstanding that Ramos expressly asked to appear pro se and without Rothberg's participation. Ramos, 2012 WL 12924, at *5. The court's brief statement was alarming enough that the state prosecutor soon after asked the court to limit Rothberg to an observer's role, with a clarifying instruction for the jury. The instruction given was that Rothberg was acting as the defendant's "legal advisor." Id., at *6. Although it would have been best if the court had not made the initial introduction, the mischaracterization did not cross McKaskle's "substantial" interruption threshold for a constitutional violation.

Ramos argues that the momentary introduction crossed the line. He cites a footnote from McKaskle: "[s]ince the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless." 465 U.S. at

13

177 n.8. Ramos similarly points to <u>United States v. Gonzalez-Lopez</u>, which instructed that structural errors "defy analysis by harmless error standards because they affect the framework within which the trial proceeds and are not simply an error in the trial process itself." 548 U.S. 140, 148-49 (2006) (quotation marks omitted).

However, "[i]t does not necessarily follow . . . that every deprivation in a category considered to be 'structural' constitutes a violation of the Constitution or requires reversal of the conviction, no matter how brief the deprivation or how trivial the proceedings that occurred during the period of deprivation." <u>Gibbons v. Savage</u>, 555 F.3d 112, 120 (2d Cir. 2009), <u>cert. denied</u>, 558 U.S. 932 (2009). The <u>Gibbons</u> court discussed (albeit in dicta) a scenario similar to the one before us: a <u>pro se</u> defendant "who, in spite of his demand to represent himself, was required to be represented by counsel." <u>Id.</u> The court speculated that such an encroachment upon self-representation would support a viable habeas claim if the unwanted representation persisted "throughout the trial, or for a *substantial or important part of it*." <u>Id.</u> (emphasis added). This notion of a "substantial" intrusion is

14

consistent with McKaskle, which held that the standby counsel's comments made over the defendant's protests were not "substantial" or "frequent enough" to disrupt the jury's perception of his pro se defense. 465 U.S. at 187. The right of self-representation is not a matter of all or nothing, especially in the context of a habeas review following an adverse state court ruling.

It is true that a spectacle of total protest against the proceedings could be undermined, slightly, by an introduction of counsel to the jury. Any presentation of a defense at all, no matter how limited, inherently disrupts a concerted refusal to participate.

Ramos made it plain enough that he wanted nothing to do with the trial and wanted nothing done on his behalf. But it is not clear from his statement of position that the absence of any defense effort was a strategic defense measure to convey a protest to the jury. Rather than mounting a theatrical defense, Ramos could have simply been quitting.[2] But even assuming his absence was intended to

_____

[2] Ramos argues on appeal that he was hoping to "telegraph a message to the jury with both his self-representation and his absence." Reply Br. at 13. But his behavior seems more like pure apathy. His declaration (made out of the presence of the jury) that he preferred to "take [his] chances with appeal" does not support his current

15

somehow influence the jury to acquit, any impact of the introduction on the jury's perceptions was insubstantial, checked by the prosecutor's prompt intervention. Rothberg's participation was limited to a three-word greeting, and that was it. After the lunch break, the trial court explained to the jury that "Mr. Rothberg has been appointed by the Court to be available to serve as a legal advisor to Mr. Ramos." Ramos, 2012 WL 12924, at *6. Given that laymen might consider availability to serve as legal advisor to be an attorney's function, an explicit clarification would certainly have been preferable. However, this statement sufficiently indicated that Rothberg was not, in fact, Ramos's active counsel (an impression greatly reinforced when Rothberg sat in the spectator section, rather than at the counsel's table, for the remainder of the trial).

More importantly, after the initial introductions, Ramos was able to advance a strategy of boycott for the duration of the trial. Rothberg never presented any sort of a defense to the jury whatsoever; indeed, he never uttered another word. Thus, "the intrusions by counsel at [Ramos's] trial were simply not substantial or frequent enough to have

characterization that his absence was intended as a signal of injustice to the jury.

seriously undermined [Ramos's] appearance before the jury in the status of one representing himself." McKaskle, 465 U.S. at 187. This was not a situation where "only the lawyers in the courtroom" knew that Ramos was exercising his right to pro se representation. Id. at 179. Ramos was therefore not deprived of his right to self-representation, and his claim for a writ of habeas corpus is denied.

**CONCLUSION**

For the foregoing reasons, we affirm.

17